[Civ. No. 38600. Second Dist., Div. Five. Jan. 12, 1972.]

FIACRO GILBERT HOLGUIN et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JACK M. HOAGE et al., Real Parties in Interest.

**COUNSEL**

Ronald M. Sohigian and Samuel Shore for Petitioners.

Robert E. Cartwright, Edward I. Pollock, Theodore A. Horn, Marvin E. Lewis, William H. Lally, Joseph W. Cotchett, Leonard Sack and Elmer Low as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Bonne, Jones & Bridges, Bruce J. Bonne, Horvitz & Minikes, Ellis J. Horvitz and Morton Minikes for Real Parties in Interest.

## OPINION

**KAUS, P. J.**—In this mandate proceeding petitioners ("plaintiffs") seek, in effect, a reversal of the respondent court's refusal to compel further discovery from the real parties in interest, Doctors Culp and Hoage ("defendants").

The underlying action is one for the alleged wrongful death of the wife and mother of plaintiffs, who died during childbirth while being attended by defendants.[1]

### FACTS

In order to appreciate the issues before us a rather tedious review of the record is required.

The alleged wrongful death occurred on May 7, 1969. The complaint was filed just over two months later. On January 20, 1970, plaintiffs filed interrogatories ("Interrogatories I") addressed to both physician defendants.[2] These interrogatories confined themselves, in the main, to defendant's professional training and experience. They were answered reasonably promptly and no issue concerning those answers is before us now.

On or about March 12, another set of interrogatories was filed and served on the defendant Doctor Culp ("Interrogatories II"). These interrogatories concern themselves, generally speaking, with the legal status of Doctor Culp in relation to plaintiffs' decedent[3] and did not ask for any particulars concerning the cause of death. They were answered in due course. Again no issue with respect to those answers is before us.

On October 16 the codefendant Sterling Drug Inc., filed requests for admission of genuineness of documents and of facts, addressed to the plaintiffs and all defendants. The documents to which the request for admissions of genuineness related were an autopsy report, a microscopic report, a neuropathology report and a chemical analysis report, all by the coroner's office. The facts of which admissions were requested were: the site of an injection of an anesthetic agent into the decedent, her height

---

[1]The complaint also contains a count for the alleged wrongful death of the unborn child with which the decedent mother was pregnant at the time of her death. (See *Norman* v. *Murphy,* 124 Cal.App.2d 95 [268 P.2d 178].)

[2]Additional defendants are the hospital where plaintiffs' decedent died and the manufacturer of a drug, Sterling Drug Inc. Except as indicated in the text of this opinion, they may be ignored for present purposes.

[3]It appears that Doctor Hoage was the attending physician at the delivery and Doctor Culp the anesthetist.

and weight at the time of her death and certain facts relating to the autopsy which had been performed by the coroner's office.

On October 22, 1970, plaintiffs' counsel served identical requests ("Requests I") on defendants Culp and Hoage. On October 27, 1970, defendants Culp and Hoage responded to Requests I by denying them.[4]

After this response plaintiff filed a motion for an order to compel further answers to the requests or to deem them admitted, and for sanctions. Defendants' counsel responded by filing a declaration to the general effect that plaintiffs' counsel should take another look at the responses on file and that, if their meaning was not already perfectly clear, defendants would file additional responses to leave no doubt that they were denying each and every request.

Plaintiffs' motion was denied on November 10, 1970.

This denial was followed by a flurry of activity on behalf of plaintiffs that is quite unprecedented in our experience. On November 12, 1970, plaintiffs filed another set of requests for admissions ("Requests II"). They are numbered 1 through 17, A through Z and AA through OO. They requested the admission of numerous facts surrounding the death of plaintiffs' decedent, the treatment given her before her death, the autopsy and matters of medical science which may or may not be pertinent to any issue in this case.[5]

Doctors Culp and Hoage filed their responses to Requests II on December 2 and December 7, 1970, respectively. Almost all were denied.[6] The propriety of these responses, as such, is not before us in this proceeding.

---

[4]The requests for admission of genuineness were numbered 1 through 4 and the requests for the admission of facts were numbered 1 through 21. Defendants Culp and Hoage filed denials to requests 1 through 21 only. Technically it can therefore be argued that four requests received no response. The parties make nothing of this apparent oversight. In any event the defendant doctors have expressed a willingness to admit the authenticity of the four reports of the coroner's office. Defendants have also expressed a willingness to furnish further responses, presumably admissions, to four of the twenty-one requests. Therefore only 17 of the requests filed on October 22, 1970 are before us.

[5]For example: "In 1969 Carbocaine was known to have toxicity in the order of one and one-half to two times that of Procaine. . . . . . . . . . . . . .
"AA. Carbocaine Hydrochloride as a 1, 1½ or 2% sterile isobaric modified Ringer's solution was not intended for routine spinal anesthesia. . . ."

[6]With respect to most denials the response states that it is made "upon the advice of counsel and pursuant to the terms and provisions of CCP, Section 2033 and 2034 (c)." Some requests are simply denied. A few, such as the genuineness of certain documents and the fact that the decedent's spinal cord was removed during the autopsy, were admitted.

On the day on which plaintiffs filed their Requests II, they filed their own responses to Requests I by Sterling Drug Inc. Most requests were admitted, one request for the admission of the fact that plaintiffs' decedent weighed 200 pounds at the time of her death was denied; several requests relating to the treatment given to plaintiffs' decedent and facts concerning the autopsy were not answered on the ground that plaintiffs were not present on either occasion and were therefore unable to determine the truth or fallacy of the facts they were requested to admit or deny. As noted earlier, the requests which plaintiffs thus answered on November 12, 1970, were identical with the ones they filed on October 22, 1970.

On November 24, 1970, plaintiffs filed an additional set of requests ("Requests III"). They are numbered 1.1 through 1.85. They request the admission of many facts relating to medical science, particularly the administration of a spinal block anesthesia. Requests III were answered by Doctors Hoage and Culp on December 8 and December 10, 1970, respectively. Most requests were denied "upon advice of counsel." A few, apparently the least controversial ones, were admitted. Again the propriety of these responses, as such, is not before us.

Plaintiffs' counsel had not been idle while waiting for the responses to Requests III. On November 27 he filed what we shall call "Interrogatories III" directed to both defendants. These are numbered 2a through 2i and 3. Essentially Interrogatories III addressed themselves to defendant's previous denials of requests for admission of facts and asked whether it was a fact that defendants believed that the denials were true.[7] Interrogatories III were answered by both defendants December 29, 1970. On the whole the answers were either negative or to the effect that the witness did not have sufficient information to supply an answer. As will appear the propriety of the answers is before us as to the defendant Culp only.

Five days after the filing of Interrogatories III, on December 2, plaintiffs filed "Interrogatories IV'" numbered 1a through 1r. They concern themselves mainly with many aspects of the autopsy. They were answered by both defendants on December 29, 1970. The answers were uniformly to the effect that, for lack of information, no answer could be furnished. The propriety of these answers is before us.

Two days after the filing of Interrogatories IV, came "Interrogatories

---

[7]For example: "2c  Is it a fact that you do not believe that an autopsy was ever performed on Lydia Holguin?" One interrogatory is as follows: "Is it a fact that you deny that you attempted the epidural anesthetic induction in Lydia Holguin at the level of the first lumbar vertebral interspace prior to her demise?"

V." Basically these interrogatories call for the factual bases for defendants' denials of facts they had been asked to admit in Requests I and II. These interrogatories were answered by both defendants on December 30, 1970. The answers arguably consisted of nothing but arguments why no answer had to be given. As will be seen, by motions brought on for hearing on February 10, 1971, plaintiffs requested further responses to several of their attempts at discovery. While generally unsuccessful, plaintiffs did obtain an order that Interrogatories V had to be answered. Answers were eventually filed on April 7 and April 8, 1971, respectively. The file shows no motion by plaintiffs for further responses. No issue with respect to the sufficiency of the answers to Interrogatories V is, therefore, before us.

Finally on December 9, 1970, plaintiffs filed "Interrogatories VI." They are numbered 1 through 17, A through Z and AA through OO. In effect they are exact copies of Requests II, each former request being preceded by the question: "Do you deny that . . . "?[8] Defendants responded to these interrogatories, also on December 29, 1970, by filing objections. The validity of those objections is properly before us.

Plaintiffs, within a few days, then filed seven motions. Three addressed themselves to the propriety of defendant Hoage's answers to Interrogatories IV, V and VI, the other four to Culp's answers to Interrogatories III, IV, V and VI.

As noted the matter came on for hearing on February 10, 1971. In addition to ordering further answers to Interrogatories V, the court ordered each defendant to answer further one question (1b) in Interrogatories IV, which called for information of the height of decedent at the time of her death. All other relief was denied.

To summarize, in this proceeding we are concerned with the propriety of the responses to Requests I, Interrogatories III—but only as to the defendant Culp—and Interrogatories IV and VI. We are not concerned with Interrogatories V because defendants were ordered to file further answers, which they did.

---

[8]One exception to this statement is in order. For reasons which we cannot fathom the seventh request for admissions in Requests II was designated as interrogatory 6a in Interrogatories VI. From that point on the requests and interrogatories are identical. This leaves request OO in Requests II without an equivalent in Interrogatories VI. This lacuna is made up by an interrogatory which has no equivalent in Requests II. It asks, in brief, that defendants state the factual basis for each denial of a request for admission in the case and defendants' contentions and bases for such denial.

Just to complete the record: on February 17, 1971, plaintiffs filed Interrogatories VII, numbered 11.1 through 11.30 on defendants. These were answered about a month later. The questions, at least in part, cover the same ground as previous interrogatories. The defendants' answers are not attacked as insufficient.

## DISCUSSION

### Requests I

In urging that defendants' responses to these requests are inadequate, plaintiffs rely chiefly on *Cembrook* v. *Superior Court,* 56 Cal.2d 423 [15 Cal.Rptr. 127, 364 P.2d 303], *Burke* v. *Superior Court,* 71 Cal. 2d 276 [78 Cal.Rptr. 481, 455 P.2d 409], and *Chodos* v. *Superior Court,* 215 Cal.App.2d 318 [30 Cal.Rptr. 303]. We do not believe that any of the cases solve the problem before us. *Cembrook* was a personal injury action against the manufacturer of Bayer aspirin. (See *Cembrook* v. *Sterling Drug Inc.,* 231 Cal.App.2d 52 [41 Cal.Rptr. 492].) Admissions were sought concerning defendant's advertising of the product, its side effects, defendant's knowledge thereof, and defendant's awareness of the plaintiff's illness. Defendant objected to the requests on the basis that they were irrelevant, ambiguous, called for conclusions and for answers to " 'an intricate and controversial matter involving complex medical and scientific facts.' " (*Cembrook* v. *Superior Court, supra,* 56 Cal.2d at p. 428.) Defendant's objections were sustained. That ruling was so patently wrong that the trial court was ordered to reconsider it in the light of the principles set forth in the *Cembrook* opinion, which we need not restate. In *Chodos* the defendants refused admissions concerning matters which were either known to them or available to them from certain sources of information. The court held that it was "neither unfair nor improper to require [defendants] to make such reasonable investigation as they may deem needed in order for them to determine now that, when the trial is held, they will, or they will not, dispute the matters involved." The court did not say, however, that the defendants were bound by whatever information they received from third parties and stressed that they could always deny the facts of which admissions were sought, either positively or on information and belief.

In *Burke* the defendant in an action on an attachment bond defended against a claim for the expenses incurred in winning the underlying action, by claiming, through denials, that the attachment could have been dissolved without winning the case on its merits. (Cf. *Reachi* v. *National Auto. & Cas. Co.,* 37 Cal.2d 808, 811-813 [236 P.2d 151].) The plaintiffs then asked for an admission that the attachment was legal and valid on its

face and that any motion to have it dissolved would not have been successful. The defendant's objection that the requests for admission called for legal conclusions was sustained by the trial court. Plaintiffs then propounded interrogatories asking for the defendant's contentions with respect to the validity of the attachment. Objections that the interrogatories were ambiguous and called for legal opinions and conclusions were again sustained. The Supreme Court then, as in *Cembrook,* ordered the trial court to reconsider the objections in the light of the principles stated in its opinion, which, again, we need not restate.

While the *Cembrook, Chodos* and *Burke* opinions are highly instructive concerning the broad scope of requests for admission, the issues there before the courts do not really touch on the problem here. In each of those cases the defendant refused to either admit or deny, thereby thwarting the purpose of section 2033 of the Code of Civil Procedure to set at rest issues which the party to whom requests for admission are addressed does not in good faith intend to contest at the trial. Here defendants have done nothing of the sort: they have clearly denied the requests.[9] Plaintiffs' position in this proceeding is therefore, in effect, that certain matters which defendants have denied are so unquestionably true, that they cannot deny them.[10]

It may well be that from their point of view defendants might be better off, in the long run, if instead of denying all the requests outright, they had denied some of them for lack of information or belief. It may also be that after a trial it will appear that plaintiffs are entitled to financial sanctions under subdivision (c), section 2034 of the Code of Civil Procedure. We do not see, however, how any court can force a litigant to admit any particular fact if he is willing to risk a perjury prosecution or financial sanctions.[11]

### Interrogatories III

■ We see nothing that plaintiff can complain about with respect to the answers to Interrogatories III. It will be recalled that these interrogatories mainly call for answers concerning each defendant's belief with respect to matters most of which were covered in the various requests for

---

[9] The denials are such in spite of the rather weaseling qualification attached to most of them that they are made on advice of counsel.

[10] In this connection it is interesting to note that plaintiffs themselves refused to admit or deny several of the same facts when they responded to the identical requests served on them.

[11] Of course, if the fact is so well established that it is the subject of judicial notice, a request for an admission thereof is unnecessary.

admissions. One of Culp's answers is an unqualified "yes."[12] Several answers are unqualified "nos."[13] Others are also in the negative, but go on to explain that they are so, because the witness has no information on the subject.

It is, of course, true that to the extent that these answers disavow denials of facts denied in the various requests for admission, they make the witness subject to impeachment. We just do not see, however, why plaintiffs were entitled to different answers.

### Interrogatories IV

Sixteen of the eighteen questions contained in this set deal with facts relating to the autopsy. Essentially the answers are to the effect that the witnesses could not answer the questions because they were not present. One question asked whether the anesthesia was applied at the level of the first lumbar vertebra. Each doctor explained that he was not certain. One question related to the height of the decedent and that question was ordered answered on February 10, 1971. The order was obeyed.

We do not believe that plaintiffs had a right to different answers. They seem to take the position that the propounding of the interrogatories created a duty in defendants to start an investigation with the various persons in the coroner's office who participated in the autopsy and then to answer in accordance with the information thus gathered, even if the facts learned were antagonistic to their trial posture. We know of no principle of discovery law which thus compels a party not only to prepare his opponent's case, but also to stipulate away his own. (See *Lindgren* v. *Superior Court,* 237 Cal.App.2d 743, 747-748 [47 Cal.Rptr. 298, 20 A.L.R.3d 748]; *Ryan* v. *Superior Court,* 186 Cal.App.2d 813, 819 [9 Cal.Rptr. 147].)

### Interrogatories VI

As noted these interrogatories parallel Requests II. (See fn. 8, *supra.*) There is, however, one additional question, which asks for the factual basis of any denial of all requests for admissions previously served. It will be recalled that Interrogatories V posed questions to the same effect as to Requests I and II. Interrogatories V were ordered answered by the February 10, 1971, order. It seems to us that consistency, if nothing else,

---

[12]The question was: "Is it a fact that you do not believe that the solution of Carbocaine that was used for attempted induction of epidural anesthesia on Lydia Holguin was in fact introduced into the subarachnoid space?"

[13]For example the answer to the second question quoted in footnote 7 above.

should have caused the trial court to order question OO of Interrogatories VI to be answered as well, at least to the extent that it covered Requests III.[14] It is hardly surprising that question OO was overlooked by the trial judge. It was psychologically hidden by the otherwise perfect parallel of Interrogatories VI with Requests II. (See fn. 8, *supra*.)

We do not, however, believe that the oversight calls for the issuance of a writ. It is perfectly obvious, from the answers given to Interrogatories V, that the only "factual" basis for denying the vast majority of the interrogatories is that defendants desire to put plaintiffs to their proof. (See fn. 14, *supra*.) The respondent court shall conclusively assume that such is the case with respect to Requests III, unless defendants, within 15 days after this decision becomes final, file additional responses.

■ Apart from question OO, the other questions in Interrogatories VI ask for answers which are quite unnecessary. Each asks whether defendants deny facts which, on the record, they had already denied when responding to Requests II. There is no reason why they should have to answer a set of interrogatories which, in effect, asks them to review the file.

The alternative writ of mandate is discharged. The peremptory writ is denied.

Stephens, J., and Aiso, J., concurred.

Petitioners' application for a hearing by the Supreme Court was denied March 8, 1972. Peters, J., was of the opinion that the petition should be granted.

---

[14]The answers which defendants filed in response to the February 10 order to Interrogatories V were, to say the least, not terribly informative. They read: "In addition to answers and responses previously given, defendant states, at the suggestion of the court, that there is no other factual basis or witness in support of the denials and responses previously set forth."