Filed 1/31/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| LISA ST. MARY, | No. H038918 |
| Petitioner, | (Monterey County Super. Ct. No. M111895) |
| v. | |
| THE SUPERIOR COURT OF CALIFORNIA FOR THE COUNTY OF MONTEREY | |
| Respondent, | |
| THOMAS SCHELLENBERG and KATHERINE MILLS, | |
| Real Parties in Interest. | |

Petitioner Lisa St. Mary (St. Mary) brought an action below for damages, alleging fraud and other claims arising out of an investment of $475,000. She sued, among others, Thomas Schellenberg and his wife, Katherine Mills. (Schellenberg and Mills are sometimes referred to herein collectively as real parties in interest, or real parties.) Schellenberg and Mills each propounded requests for admissions (RFAs) directed to St. Mary, which consisted collectively of 119 individual RFAs. After making two written requests for a two-week extension to respond, and after Schellenberg denied the extension request one day after the due date for the responses, counsel for St. Mary served responses to the RFAs. They were served four days late, on July 16, 2012. Four days later, real parties, without any attempt to meet and confer, filed a motion (Motion)

with the respondent superior court requesting that the 119 RFAs in their entirety be deemed admitted, pursuant to Code of Civil Procedure section 2033.280, subdivision (b).[1] The court granted the Motion as to the Schellenberg RFAs, deemed 41 of the 105 RFAs admitted, and awarded sanctions in favor of real parties. The court's order omitted any reference to the Motion to deem admitted the 14 RFAs propounded by Mills upon St. Mary.

St. Mary seeks a writ of mandate directing the superior court to vacate its order deeming the 41 Schellenberg RFAs admitted. She contends in her petition that real parties' Motion was defective in that it did not constitute a motion to compel further responses to RFAs under section 2033.290. She argues further that real parties improperly included new matter for the first time in their reply papers—namely, argument directed to St. Mary's responses to specific Schellenberg RFAs that real parties claimed were deficient—and that the court granted the Motion based upon the presentation of such new arguments. St. Mary asserts that the impact of the court's order is extremely significant because, among other things, six of the RFAs deemed admitted are specifically directed to a potential statute of limitations defense asserted by real parties.

In response, real parties raise several procedural objections to the petition, including its timeliness.[2] In addition, real parties assert, among other things, that St. Mary has failed to demonstrate " 'clear error' " entitling her to relief; the statutes under which real parties' Motion was brought (§ 2033.280) and the additional statute governing motions to compel further responses to RFAs (§ 2033.290) are clear; and the untimely

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] To the extent warranted, these procedural objections are addressed, *post*.

2

responses to RFAs served by St. Mary were not substantially compliant with the Code of Civil Procedure.

We conclude that respondent court erred in granting real parties' Motion by deeming admitted 41 of the Schellenberg RFAs. Accordingly, we will grant the petition and order a writ of mandamus to issue commanding respondent to vacate its order and issue a new and different order denying real parties' Motion pursuant to section 2033.280, subdivision (b) as to the RFAs propounded upon St. Mary.

## PROCEDURAL BACKGROUND[3]

I.    *The Complaint*

St. Mary filed her complaint on April 25, 2011, alleging claims sounding in fraud against Schellenberg, Mills, and David Nilsen[4] (collectively, Defendants), arising out of the investment of her life savings of $475,000. According to the pleading's caption, St. Mary asserts claims for breach of fiduciary duty, fraudulent concealment, conflict of interest, affirmative misrepresentation, fraudulent concealment in connection with the sale of an interest in real property, embezzlement, and a request for an accounting.

It is alleged by St. Mary[5] that after having heard a radio advertisement in December 2005 promoting investment opportunities in Cedar Funding, Inc., she called the telephone

---

[3] In addition to the procedural matters relating to the discovery order being challenged in these proceedings, both St. Mary and real parties have included discussions of various other procedural aspects of the underlying case, including other discovery matters. These ancillary procedural matters are not germane to our disposition of the petition.

[4] Nilsen is alleged to have been the former CEO of Cedar Funding, Inc., and a licensed real estate broker whose license was suspended. There is evidence in the record that, as of August 2012, he was incarcerated in a federal penitentiary.

[5] The statements made in this paragraph and the succeeding paragraph are based upon the allegations made by St. Mary in her complaint. For simplicity and to avoid repetition, we have generally omitted the phrase "St. Mary alleges in her complaint" in describing the background of her claims, which claims we assume for purposes of this proceeding are denied by real parties. In our consideration of the petition, we have also

(*Cont.*)

3

number indicated in the radio advertisement and was referred to Schellenberg, who was identified as " 'Director, New Business' for Cedar Funding, and [as] a 'Real Estate & Loan Consultant.' " Schellenberg provided written materials to St. Mary and later recommended that she make a loan to his wholly owned separate venture, Neo Ventures, Inc., to facilitate ongoing substantial renovations of residential property located at 214 4th Street in Pacific Grove (subject property). He represented that in exchange for her $475,000 investment, she "would receive an undivided 92.054 % majority interest in an already existing Promissory Note and an already recorded Deed of Trust" recorded against and secured by the subject property. Schellenberg represented to St. Mary that this deed of trust would ultimately be in first priority, that the subject property would be worth $1,375,000, and that her investment would be protected.

St. Mary alleges further in her complaint that "Defendants [intended] to defraud [her] by inducing her to advance $475,000.00 for [their] personal, secret and prohibited use and enjoyment . . . Instead of action for the benefit of protection of [St. Mary] in a transaction lending her investment out to a third person on a safe and fully secured loan with the represented adequate equity as security, Defendants always intended to convert the proceeds of the loan to their own personal use and benefit and did so." St. Mary alleges that she provided the funds to Defendants in January 2006 in reasonable and justifiable reliance upon their representations. By March 2007, "Defendants had fraudulently but secretly extracted $1,887,000.00" using the subject property as the basis for the financial transactions. (Original emphasis omitted.)[6] St. Mary never received any security as promised, and her entire investment was lost after the bankruptcy of Cedar

_____

noted the lengthy recitation of alleged underlying facts presented by real parties (almost entirely without citation to the record).

[6] St. Mary alleges that the subject property "was appraised at $775,000.00 at the top of the market in 2005."

4

Funding, Inc. and the foreclosure of the subject property effectuated by a lienholder bank. She became aware of "the vast fraudulent operations of Defendants" in May 2008.

## II.  *The RFAs and Responses*

On June 7, 2012,[7] Schellenberg served by mail upon St. Mary a set of 105 RFAs, seeking that she admit or deny certain specified matters.[8]  On the same date, Mills served by mail upon St. Mary a set of 14 RFAs, seeking that she admit or deny specified matters. St. Mary was therefore required to serve her responses to the Schellenberger RFAs and the Mills RFAs on or before July 12, 2012.  (§§ 2033.250; 1013, subd. (a).)

On July 16—four days late—St. Mary served her responses to the Schellenberg and Mills RFAs by facsimile and mail.  Prior to this tardy service of the responses, and on or before the July 12 deadline for service of the responses, counsel for St. Mary, David Hollingsworth—based upon the volume of the discovery and his involvement in preparing for a federal jury trial—requested that real parties grant him a two-week extension to complete the responses.[9]  Real parties did not respond to the extension request until after the responses were due.  On July 13, Schellenberg faxed a letter to Hollingsworth granting a nine-day extension, subject to the condition that St. Mary immediately file a dismissal with prejudice of the action as to Mills.

---

[7] All dates hereafter stated are 2012 unless otherwise specified.

[8] Service of the 105 Schellenberg RFAs was accompanied by the requisite declaration for additional discovery pursuant to section 2033.050.

[9] Hollingsworth's paralegal sent an e-mail to Schellenberg on July 10, requesting a two-week extension; the paralegal received no response to this request.  After learning that there had been no response to the July 10 extension request, Hollingsworth drafted and faxed a letter on July 12, reiterating the request for a two-week extension.  Later the same day, Hollingsworth attempted to reach Schellenberg by telephone and left a voicemail message repeating the request for an extension.

III.     *Real Parties' Motion to Have RFAs Deemed Admitted*

On July 20—four days after receipt by facsimile of the responses to the RFAs—real parties filed a Motion to have the Schellenberg and Mills RFAs propounded upon St. Mary deemed admitted.[10]  Real parties acknowledged that St. Mary had (belatedly) served responses to the two sets of RFAs, and they attached those responses to the respective declarations of Schellenberg and Mills filed in support of the Motion.  Real parties contended that St. Mary's "responses [were] defective, legally deficient, and a nullity." They repeated this conclusory statement serially in the memorandum filed in support of the Motion.  The Motion contained no reference to any particular response by St. Mary to any of the 119 RFAs to explain real parties' claim that the responses were defective or legally deficient.  Indeed, other than being served four days late, there was no basis for real parties' claim that St. Mary's responses to the 14 Mills RFAs were deficient; each response consisted of a one-word admission or denial.

On August 3, St. Mary's counsel and Schellenberg appeared at a case management conference.  There was substantial discussion between Hollingsworth, Schellenberg, and the court concerning the Motion, outstanding interrogatory responses due from St. Mary to real parties (concerning St. Mary's denials of any of the RFAs), and Hollingsworth's unavailability for a portion of August due to a federal jury trial.  The court suggested that it might be appropriate for the parties to arrive at a compromise under which St. Mary would agree to serve responses to the interrogatories by a date certain, in exchange for which real parties would vacate the hearing on the Motion.  At the conclusion of the conference, Schellenberg stipulated that if he had received St. Mary's responses to interrogatories "in [his] hands" by the end of business on August 9, he would drop the Motion.

---

[10] Real parties' Motion also sought to have deemed admitted certain RFAs propounded by Schellenberg and Mills upon Nilsen to which responses were not received.  The court granted real parties' motion as to Nilsen.  This aspect of real parties' Motion is not at issue here.

Hollingsworth, on behalf of St. Mary, filed opposition to the Motion on August 3. That opposition emphasized (1) the collective volume of the RFAs; (2) Hollingsworth's unsuccessful attempts to obtain a two-week extension to respond; (3) real parties' belated reply to the extension request made after the responses were due in which they conditioned the grant of an extension upon the "extortionate demand" that Mills be dismissed with prejudice; and (4) the fact that St. Mary's responses to both sets of RFAs were received by real parties before they filed the Motion, and she had thus substantially complied with section 2033.220, notwithstanding that the responses were four days late. Hollingsworth also noted that he had cured a technical issue with the responses to the RFAs—his failure to sign them as counsel—once he was made aware of the issue by a statement made in the Motion.

Real parties filed a reply in support of their Motion on August 10.[11]

At the hearing on the Motion on August 17, Schellenberg personally appeared and Hollingsworth appeared by telephone. After the court determined that the parties disagreed as to whether Hollingsworth had complied by serving the interrogatory responses on August 9, in compliance with the conditional stipulation under which real parties agreed to drop the Motion, the court heard the merits of the Motion.[12] It found that some of the responses complied with the Code of Civil Procedure, but some did not. The court concluded that the Motion as to the responses to the Schellenberg RFAs should be granted, and that any responses that were not unqualified denials would be deemed admitted. It entered an order the same day granting real parties' Motion, deeming admitted

[11] The substance of real parties' reply is discussed, *post*.

[12] There is evidence in the record suggesting that the court should have required Schellenberg to honor his agreement to vacate the hearing on the Motion because St. Mary complied with the terms of the stipulation; she served her interrogatory responses on August 9 and they were received by real parties (at least by fax) on August 9. Although this issue is raised by St. Mary, because we conclude that the trial court erred, we do not address this claim.

7

41 of the Schellenberg RFAs; it concluded that as to those RFA responses, St. Mary had failed to serve responses in substantial compliance with section 2033.220.[13]

St. Mary filed a motion for reconsideration of the court's order granting the Motion. On October 5, the court denied the motion for reconsideration.

IV.    *Petition for Writ of Mandate*

St. Mary filed her petition for writ of mandate with this court on October 22.[14]  On November 9, we issued an order staying all trial court proceedings and a *Palma*[15] notice indicating that we were considering issuing a peremptory writ of mandate in the first

---

[13] Real parties contend "[t]he trial court found St. Mary failed to substantially comply with § 2033.280 in 82 out of 119 FRAS [*sic*]."  This is incorrect.  The court deemed admitted the following 41 Schellenberg RFAs based upon their alleged noncompliance with section 2033.220:  20, 27, 29, 31, 36, 38, 48, 51-59, 61, 64-76, 82, 84, 85, 87-92, 96, and 102.  The court amended its order on September 5, to include an award of $245 in sanctions in favor of real parties.  Neither the order nor the amended order specifically addressed the Motion as it concerned the Mills RFAs propounded upon St. Mary.

[14] Real parties in their opposition contend that the petition is untimely and is defective because it is not verified by St. Mary personally.  Neither position has merit. Appellate courts generally require that nonstatutory writ petitions be filed within 60 days of service of the challenged order, i.e., the same 60-day period applicable to appeals. (*Cal West Nurseries v. Superior Court* (2005) 129 Cal.App.4th 1170, 1173-1174; see generally Eisenberg et al., Cal. Practice Guide:  Civil Appeals and Writs (The Rutter Group 2012) ¶¶ 15:144 to 15:146, pp. 15-74 to 15-75 (rev. #1 2012).)  The challenged order here was served on August 23, and the petition was filed within 60 days thereafter on October 22.  The petition was verified by St. Mary's counsel.  Given that the underlying facts concerning the issues in the petition—i.e., the procedural history of real parties' RFAs, St. Mary's responses, real parties' Motion to deem the RFAs admitted and St. Mary's opposition and real parties' reply, and the hearing and the court's ruling on the Motion—are all ones within the personal knowledge of St. Mary's counsel, the failure of St. Mary to verify the petition is not improper.  (§ 446, subd. (a); see Eisenberg, *supra,* ¶¶ 15:185, p. 15-93; *Perlman v. Municipal Court* (1979) 99 Cal.App.3d 568, 574 [" 'if the facts are within the knowledge of the attorney . . . , [he] may verify the pleading without regard to the existence of . . . conditions' " of the party's unavailability].)

instance.  Real Parties filed their opposition on December 27, and St. Mary filed her reply on January 29, 2013.

DISCUSSION

I.      *Standard of Review*

Discovery orders are generally reviewed for abuse of discretion.  (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733.)  This abuse of discretion standard is applicable to a variety of discovery rulings.  (See, e.g., *Edwards v. Superior Court* (1976) 16 Cal.3d 905, 913 [order compelling psychiatric examination of litigant]; *Life Technologies Corp. v. Superior Court* (2011) 197 Cal.App.4th 640, 655 [order compelling further responses to interrogatories]; *Sinaiko Healthcare Consulting, Inc. v. Pacific Healthcare Consultants* (2007) 148 Cal.App.4th 390, 401 (*Sinaiko Healthcare*) [discovery sanctions order]; *Obregon v. Superior Court* (1998) 67 Cal.App.4th 424, 431 [determination of adequacy of meet and confer efforts regarding discovery dispute].)

Our high court has indicated that this abuse of discretion standard is founded on principles of deference to the trial court, such as "whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered" (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 598); and that that appellate courts should disturb discretionary trial court rulings only upon a showing of " ' "a clear case of abuse" ' " and " ' "a miscarriage of justice" ' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331.)  But these broad principles should not be read as permitting an appellate court to reverse a trial court based upon abuse of discretion only if "its action was utterly irrational."  (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297.)  As our high court later explained, "the court's discretion is not unlimited . . . and it must be exercised within the confines of the applicable legal principles."  (*Sargon Enterprises, Inc. v. University of*

---

[15] *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 180.  (See also *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1240-1241.)

9

*Southern California* (2012) 55 Cal.4th 747, 773.)  The court explained further:  " 'The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown.'  [Citations.] 'The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action. . . ."  Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.  [Citation.] . . . [¶] The legal principles that govern the subject of discretionary action vary greatly with context.  [Citation.] They are derived from the common law or statutes under which discretion is conferred.'  [Citation.]  To determine if a court abused its discretion, we must thus consider 'the legal principles and policies that should have guided the court's actions.'  [Citation.]"  (*Ibid.*)  Thus, "[a]ction that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion.  [Citation.]"  (*City of Sacramento v. Drew*, *supra*, 207 Cal.App.3d at p. 1297.)

Accordingly, "[w]here . . . the relevant facts [concerning the discovery order] are undisputed, we review a trial court's exercise of discretion as a question of law. [Citation.]"  (*Toshiba America Electronic Components, Inc. v. Superior Court* (2004) 124 Cal.App.4th 762, 768 (*Toshiba America*).)  And to the extent we must construe relevant discovery statutes in resolving the issues in this proceeding, we do so de novo and without regard to the trial court's reasoning.  (*Sinaiko Healthcare*, *supra*, 148 Cal.App.4th at p. 401.)

Writ review of discovery rulings is generally disfavored.  (*O'Grady v. Superior Court* (2006) 139 Cal.App.4th 1423, 1429 (*O'Grady*).)  Review of discovery rulings by extraordinary writ proceedings "is generally limited to 'situations where (1) the issues presented are of first impression and of general importance to the trial courts and to the profession [citation], (2) the order denying discovery prevents a party from having a fair

opportunity to litigate his or her case [citation], or (3) the ruling compelling discovery would violate a privilege [citations].' [Citation.]" (*OXY Resources California LLC v. Superior Court* (2004) 115 Cal.App.4th 874, 886 (*OXY Resources*), quoting *Johnson v. Superior Court* (2000) 80 Cal.App.4th 1050, 1061; see also *Toshiba America*, *supra*, 124 Cal.App.4th at p. 767.) Furthermore, "[b]ecause requests for admissions are more closely akin to summary adjudication procedures than to orthodox discovery, being designed not so much to 'discover' the facts and to expedite trial preparation as to render it unnecessary to try an otherwise triable issue of fact or law [citations], we do not apply the rule that a reviewing court should rarely interfere with pretrial discovery orders, particularly where such orders operate to grant discovery. [Citation.]" (*Hansen v. Superior Court* (1983) 149 Cal.App.3d 823, 827-828.)

II.   *Requests for Admissions and Related Discovery Motions*

A party may request that another litigant "admit the genuineness of specified documents, or the truth of specified matters of fact, opinion relating to fact, or application of law to fact. A request for admission may relate to a matter that is in controversy between the parties." (§ 2033.010.) Unless the responding party moves promptly for a protective order under section 2033.080, he or she, within 30 days of service of the RFAs (§ 2033.250), shall respond in writing under oath and separately to each RFA (§ 2033.210, subd. (a)) and "shall answer the substance of the requested admission, or set forth an objection to the particular request" (*id.*, subd, (b)). Each response to the RFAs must be "complete and straightforward." (§ 2033.220, subd. (a).) The responding party shall admit as much of the request that is true, "either as expressed in the request itself or as reasonably and clearly qualified by the responding party" (*id.*, subd. (b)(1)); "[d]eny so much of the matter involved in the request as is untrue" (*id.*, subd. (b)(2)); or "[s]pecify

11

so much of the matter involved in the request as to the truth of which the responding party lacks sufficient information or knowledge" (*id.*, subd. (b)(3)).[16]

RFAs are different from other civil discovery tools such as depositions, interrogatories, and requests for documents. "Most of the other discovery procedures are aimed primarily at assisting counsel to prepare for trial. Requests for admissions, on the other hand, are primarily aimed at setting at rest a triable issue so that it will not have to be tried. Thus, such requests, in a most definite manner, are aimed at expediting the trial." (*Cembrook v. Superior Court* (1961) 56 Cal.2d 423, 429 (*Cembrook*); see also *Studll v. Sparrow* (2001) 92 Cal.App.4th 860, 864 (*Studll*) [instead of "seeking to uncover information, [RFAs] seek to eliminate the need for proof"].) As has been explained in one treatise: "The request for admission differs fundamentally from the other five discovery tools (depositions, interrogatories, inspection demands, medical examinations, and expert witness exchanges). These devices principally seek to *obtain* proof for use at trial. In marked contrast, admission requests seek to *eliminate* the need for proof: '[T]he purpose of the admissions procedure . . . is to limit the triable issues and spare the parties the burden and expense of litigating undisputed issues.' Sometimes, the admissions obtained will even leave the party making them vulnerable to summary judgment." (Hogan and Weber, 1 Cal. Civil Discovery (2d ed. 2005) § 9.1, p. 9-2, fns.

---

[16] "(a) Each answer in a response to requests for admission shall be as complete and straightforward as the information reasonably available to the responding party permits. [¶] (b) Each answer shall: [¶] (1) Admit so much of the matter involved in the request as is true, either as expressed in the request itself or as reasonably and clearly qualified by the responding party. [¶] (2) Deny so much of the matter involved in the request as is untrue. [¶] (3) Specify so much of the matter involved in the request as to the truth of which the responding party lacks sufficient information or knowledge. [¶] (c) If a responding party gives lack of information or knowledge as a reason for a failure to admit all or part of a request for admission, that party shall state in the answer that a reasonable inquiry concerning the matter in the particular request has been made, and that the information known or readily obtainable is insufficient to enable that party to admit the matter." (§ 2033.220.)

omitted, quoting *Shepard & Morgan v. Lee & Daniel, Inc.* (1982) 31 Cal.3d 256, 261.)
Matters that are admitted or deemed admitted through RFA discovery devices are
conclusively established in the litigation and are not subject to being contested through
contradictory evidence. (*Murillo v. Superior Court* (2006) 143 Cal.App.4th 730, 736
(*Murillo*).)

Prior to 1987 and the enactment of the Civil Discovery Act, a party propounding
RFAs was required to include a warning that noncompliance would result in the RFAs
being deemed admitted; in the event timely responses were not served and the
propounding party then served a statutory notice that the RFAs had been deemed
admitted, the nonresponding party would then have 30 days to make a motion for relief
from default under section 473 to avoid the RFAs becoming binding admissions. (*Wilcox
v. Birtwhistle* (1999) 21 Cal.4th 973, 979 (*Wilcox*).) "This practice, however, was
problematic because it: (1) was too 'draconian' and 'imposed a sanction for nonresponse
or tardy response that [was] out of all proportion to the abuse of discovery'; and
(2) created no incentive for a party willing to make the admissions to serve an actual
response. [Citations.]" (*Id.* at pp. 979-980.)[17]

Under the RFA procedure postdating the Civil Discovery Act, a propounding party
must take affirmative steps—by bringing a formal "deemed admitted" motion—to have
RFAs to which timely responses are not received deemed admitted. In the event
responses to RFAs are not timely served, responding party waives any objections thereto
(§ 2033.280, subd. (a)), and "[t]he requesting party may move for an order that the

---

[17] See also Hogan and Weber, 1 Cal. Civil Discovery, *supra*, § 9.15, p. 9-40:
"Thus, for the price of a postage stamp and some legal stationery, a litigant could spin the
'deemed admission' wheel. If the requesting party was lucky, there would be no
response, or it would be untimely or unverified. That party would then spin the wheel
again by serving a 'notice of deemed admission.' At the very least, the delinquent party
would be at the mercy of some trial judge's notion of what constitutes 'mistake, surprise
or excusable neglect.' "

13

genuineness of any documents and the truth of any matters specified in the requests be deemed admitted, as well as for a monetary sanction" (*id.*, subd. (b)). Unless the court determines that the responding party "has served, before the hearing on the motion, a proposed response to the requests for admission that is in substantial compliance with Section 2033.220," it must order the RFAs deemed admitted. (*Id.*, subd. (c).) "[A] deemed admitted order establishes, by judicial fiat, that a nonresponding party has responded to the requests by admitting the truth of all matters contained therein." (*Wilcox*, *supra*, 21 Cal.4th at p. 979.) The court must also impose monetary sanctions upon the party and/or the attorney for the failure to serve a timely response to the RFAs. (§ 2033.280, subd. (c).) But a responding party's service, prior to the hearing on the "deemed admitted" motion, of substantially compliant responses, will defeat a propounding party's attempt under section 2033.280 to have the RFAs deemed admitted. (*Tobin v. Oris* (1992) 3 Cal.App.4th 814, 827 (*Tobin*).) As one court put it: "If the party manages to serve its responses before the hearing, the court has no discretion but to deny the motion. But woe betide the party who fails to serve responses before the hearing. In that instance the court has no discretion but to grant the admission motion, usually with fatal consequences for the defaulting party. One might call it 'two strikes and you're out' as applied to civil procedure." (*Demyer v. Costa Mesa Mobile Home Estates* (1995) 36 Cal.App.4th 393, 395-396, fns. omitted (*Demyer*).)[18]

If the propounding party believes that the responses to RFAs are deficient in some respect or that any objections thereto are not well taken, he or she may make a motion to compel further responses under section 2033.290. (See *Wimberly v. Derby Cycle Corp.* (1997) 56 Cal.App.4th 618, 636; *Tobin*, *supra*, 3 Cal.App.4th at p. 829, fn. 25.) Section 2033.290 provides that such a motion to compel further responses may be made within

---

[18] Both *Tobin*, *supra*, 3 Cal.App.4th 814, and *Demyer*, *supra*, 36 Cal.App.4th 393, were disapproved on other grounds in *Wilcox*, *supra*, 21 Cal.4th at p. 983, fn. 12.

45 days of service of the responses (§ 2033.290, subd. (c)) if the propounding party asserts that the particular answer or answers are "evasive or incomplete" or the objection or objections are "without merit or too general" (*id.*, subd. (a)). The court is required to impose sanctions upon the unsuccessful party or attorney for the party in connection with a motion to compel further responses, unless it finds that the "one subject to sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (*Id.*, subd. (d).) And if the responding party disobeys an order compelling further responses made under section 2033.290, the court is empowered to "order that the matters involved in the requests be deemed admitted" and/or impose monetary sanctions. (*Id.*, subd. (e).)[19]

III.    *Order Deeming RFAs Admitted Was an Abuse of Discretion*

A.    *Nature of Deemed Admitted Motion*

We first address the nature of the Motion brought by real parties, because resolution of this issue is directly germane to the propriety of the challenged order. As discussed *ante*, there are three types of motions that a party propounding RFAs may initiate: (1) motions to deem RFAs admitted based upon the responding party's failure to serve any responses at all in a timely fashion (§ 2033.280, subd. (b)); (2) motions to compel further responses to RFAs where the responses are claimed to be inadequate or the objections improper (§ 2033.290, subd. (a)); and (3) motions to deem responses admitted and/or for sanctions based upon the responding party's disobedience of an order

---

[19] In addition to the deemed admitted motion under section 2033.280, subdivision (a), and the motion to compel further responses procedure delineated in section 2033.290, subd. (a), the Code of Civil Procedure also specifies that a responding party may seek leave of court to withdraw or modify an admission on the basis of mistake, inadvertence, or excusable neglect. (§ 2033.300; see *New Albertsons, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1418-1421 (*New Albertsons, Inc.*).) That motion procedure is not germane to this proceeding.

15

compelling further responses (*id.*, subd. (e)).  It is clear for a number of reasons that the Motion was of the first-described type pursuant to section 2033.280, subdivision (b).

First, the Motion did not include a statement that real parties were seeking to compel *further* responses because they were inadequate or deficient.  Second, real parties made no reference in their Motion to any of the specific, tardy RFA responses of St. Mary that were allegedly substantively inadequate.  Nor did they describe in the Motion with any specificity the basis for their generalized and repeated claim that the responses were "defective, legally deficient, and a nullity."  Third, neither the notice nor memorandum in support of the Motion contained a reference to section 2033.290, the statute governing motions to compel further RFA responses.  Fourth, the Motion included no declaration indicating any meet and confer attempts made by real parties in an effort to avoid bringing the Motion.  Clearly, such a declaration would have been required for a motion to compel further responses.  (§ 2033.290, subd. (b); see also § 2023.020 [court shall impose sanction for failure to meet and confer as required under Civil Discovery Act].)  Indeed, real parties stated in the Motion that there is no meet and confer obligation at all—a true statement for a deemed admitted motion brought under section 2033.280 (Weil & Brown, Cal. Practice Guide:  Civil Procedure Before Trial (The Rutter Group 2013) ¶ 8:1371, p. 8G-25), but an incorrect one for motions to compel further responses (§ 2033.290, subd. (b)).  Fifth, the Motion was not accompanied by the requisite separate statement, under which the moving party, as to each allegedly inadequate RFA response, must state individually the RFA, the RFA response, and the factual and legal reasons why the response is inadequate.  (Cal. Rules of Court, rule 3.1345; see *Mills v. U.S. Bank* (2008) 166 Cal.App.4th 871, 893 [failure to include separate statement required by Rules of Court provided justification of court's denial of discovery motion].)

Thus, it is clear that real parties' Motion was one to deem the RFAs admitted based upon the responding party's failure to serve timely any responses at all under section 2033.280, subdivision (b).  Real parties acknowledged below and in their

16

opposition to the petition here that the Motion was to deem RFAs admitted (section 2033.280, subdivision (b)), and was not a motion to compel further responses (section 2033.290, subdivision (a)). But as we will explain, *post*, real parties in their reply memorandum filed below and the court at the hearing on the Motion effectively and improperly transmuted the Motion from a deemed admitted motion into a motion to compel further responses.

B.       *The Court Erred In Deeming the 41 RFAs Admitted*

As noted, in the event timely RFA responses are not served, the court is required to grant the propounding party's deemed admitted motion "unless it finds that the party to whom the requests for admission have been directed has served, before the hearing on the motion, a proposed response to the requests for admission that is in substantial compliance with Section 2033.220." (§ 2033.280, subd. (c).) Thus, a responding party's service of a tardy proposed RFA response that is substantially Code-compliant will defeat a deemed admitted motion. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶¶ 8:1374 to 8:1374.2, p. 8G-26.) Here, St. Mary served her proposed response to the RFAs not only before the hearing on the Motion, but even before the Motion was *even filed*. Thus, the key question is whether her proposed RFA response substantially complied with the requirements of section 2033.220.

The Civil Discovery Act does not include a definition of "substantial compliance" in the context of service of a proposed RFA response that complies with section 2033.220. And very few cases have addressed the circumstances under which a proposed, untimely RFA response will be deemed to be qualitatively not in substantial compliance with the Code. (See, e.g., *Allen-Pacific, Ltd. v. Superior Court* (1997) 57 Cal.App.4th 1546, 1551 [unverified RFA response is not in substantial compliance with the law], disapproved on other grounds in *Wilcox*, *supra*, 21 Cal.4th at p. 983; *Appleton v. Superior Court* (1988) 206 Cal.App.3d 632, 636 [RFA response that is unverified

17

"tantamount to no response[] at all"].)  We therefore turn to case law generally addressing substantial statutory compliance.

" 'Substantial compliance, as the phrase is used in the decisions, means actual compliance in respect to the substance essential to every reasonable objective of the statute.' (*Stasher v. Harger-Haldeman* (1962) 58 Cal.2d 23, 29 (*Stasher*).)  Where there is compliance as to all matters of substance technical deviations are not to be given the stature of noncompliance.  [Citation.]  Substance prevails over form." (*Southern Pac. Transportation Co. v. State Bd. of Equalization* (1985) 175 Cal.App.3d 438, 442; see also *Western States Petroleum Assn. v. Board of Equalization* (2013) 57 Cal.4th 401, 426.) Our high court has more recently explained with respect to the above-quoted passage from *Stasher*:  "This formulation is unobjectionable so long as it is understood to mean that each objective or purpose of a statute must be achieved in order to satisfy the substantial compliance standard, but this language cannot properly be understood to require 'actual compliance' with every specific statutory requirement." (*Costa v. Superior Court* (2006) 37 Cal.4th 986, 1017, fn. 24 (*Costa*).)  An appellate court in a more recent case succinctly observed:  "Substantial compliance with a statute is dependent on the meaning and purpose of the statute." (*Freeman v. Vista de Santa Barbara Associates, LP* (2012) 207 Cal.App.4th 791, 793 (*Freeman*).)

We turn to examine whether St. Mary's proposed response to the Schellenberg RFAs substantially complied with section 2033.220.  Initially, we take issue with respondent court's approach.  The court examined the individual RFA responses, determined that some 41 of them were not Code-compliant, and found—explicitly in its announced reasoning at the hearing, and implicitly in the subsequent order—that the remaining 64 RFA responses did, in fact, comply with section 2033.220.  It therefore deemed admitted the RFAs corresponding with the 41 responses it determined to have been noncompliant, implicitly denying the deemed admitted Motion as to the responses to the remaining 64 RFAs.

18

We find no authority for this piecemeal approach to adjudicating a tardy, proposed RFA response filed by a responding party prior to the hearing on a deemed admitted motion. Subdivision (c) of section 2033.280 requires the court to evaluate whether the "proposed *response* to the requests for admission" substantially complies with section 2033.220. (Italics added.) This suggests that the court evaluate qualitatively the proposed response to RFAs in toto to determine whether it substantially complies with the Code. It does not permit the court to segregate each individual RFA response for the purpose of finding that portions of the document are Code-compliant (and will therefore be accepted), while concluding that other portions are noncompliant (and will thus be rejected). Furthermore, the fact that there is an effective statutory vehicle by which a propounding party may seek a court order compelling a responding party to cure individual RFA responses deemed not to be in compliance with section 2033.220— namely, a motion to compel further responses under section 2033.290—offers additional support for our view that the court's seriatim approach to St. Mary's proposed response to the RFAs was improper. We therefore conclude that the court's misapplication of section 2033.280 in granting the deemed admitted Motion in part and denying it in part constituted an abuse of discretion. (See *City of Sacramento v. Drew*, *supra*, 207 Cal.App.3d at p. 1297 ["[a]ction that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion."].)

Were we to disregard the court's failure to evaluate St. Mary's proposed response to RFAs in its entirety to determine its compliance with section 2033.220, we would nonetheless conclude that the court erred. First, the proposed response to the RFAs was verified as required by section 2033.210, subdivision (a). (Cf. *Allen-Pacific, Ltd. v. Superior Court*, *supra*, 57 Cal.App.4th at p. 1551 [unverified response to RFAs did not substantially comply with law].) Further, St. Mary's response was unquestionably Code-

19

compliant, at least as it concerned the responses to 64 of the individual RFAs: they consisted of one-word "Admit" or "Deny" responses.[20]

Moreover, the court's conclusion that the responses to the remaining 41 RFAs did not substantially comply with section 2033.220—based upon reasoning stated at the hearing that each response was "not unequivocal and [was] incomplete" because each contained additional language besides an admission or denial—was incorrect. This finding was apparently based upon the faulty premise that it is universally improper for a responding party to include any explanation in denying or admitting an individual RFA. Although "[a] denial of all or any portion of the request must be unequivocal [citation] . . . reasonable qualifications are not improper." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶ 8:1332.1, p. 8G-16; see also Hogan and Weber, 1 Cal. Civil Discovery, *supra*, § 9.11, pp. 9-25 to 9-26.) Thus, for instance, the RFA response, " 'As framed, denied,' " was held to constitute a legally sufficient denial. (*Smith v. Circle P Ranch Co.* (1978) 87 Cal.App.3d 267, 275; see also *Holguin v. Superior Court* (1972) 22 Cal.App.3d 812, 820 & fn. 9 [RFA responses proper despite "rather weaseling qualification attached to most of them that they are made on advice of counsel"].)

An examination of a small sample of the RFA responses the court found deficient illustrates the point. St. Mary's response to RFA number 20 ("Admit you attended a meeting with David Nilsen on or about January 13, 2006") was "Admit. Thomas Schellenberg was also present." This response admitted the statement and was not improper. St. Mary's response to RFA number 27 ("Admit that you intended on purchasing a fractional interest in a real estate secured note and deed of trust from Cedar Funding, Inc.") was "Admit, first position only." This was also a proper admission to the

---

**[20]** The court at the hearing acknowledged that the individual responses consisting of one-word denials to the RFAs were Code-compliant.

statement, and the fact that it included a short statement further explaining the nature of St. Mary's intent beyond what was included in the RFA did not render the response improper. St. Mary's response to RFA number 88 ("Admit that you knew during the month of March 2008, that there were problems at Cedar Funding, Inc.") was: "Deny. There seemed to be rational explanations for tardiness." This response was also apparently a straightforward denial that included an explanation as to the reason the statement was denied.

St. Mary responded to RFA number 91 ("Admit you received a letter from David Nilsen, owner of Cedar Funding, Inc.[,] on or about April 9, 2008, telling you that there were problems at Cedar Funding, Inc.") with the following: "Deny. That letter dated April 10, 2008, was by no means a statement of 'problems at Cedar Funding, Inc.' but attribution of all delays to 'the worldwide financial markets are in turmoil due to the effects of the U.S. sub-prime mortgage markets[,]' and 'investment banks like Bear Stearns.' In fact, on 4/17/08 at 5:26 P.M., Mr. Schellenberg answered my inquiry of one hour earlier by personally attributing all problems to a declining, problematic economy and urging me to discount 'rumor and fear, innuendo and imagination.' All problems fully known and understood by Mr. Schellenberg and Mr. Nilsen were continued to be concealed. [*Sic.*]" In this response, St. Mary attempted to deny that the specified letter had the content as described in the RFA. Without us determining conclusively whether it was in full compliance with section 2033.220, it constituted a denial that was in substantial compliance with the statute.[21]

---

[21] As we read St. Mary's response to this RFA, we understand that she does not deny receiving the referenced letter, but otherwise denies that the letter contained the substance as described in the RFA. If our understanding is correct, a more adroit response to the RFA would have been, in substance, "Admit receipt of the letter on or about April 9, 2008, but otherwise deny." (Since Schellenberg concurrently served upon St. Mary a set of interrogatories asking her to explain any of her responses to RFAs that were not unqualified admissions, she could have explained the reason for her partial

(*Cont.*)

21

Our review of the totality of St. Mary's proposed response to the Schellenberg RFAs—an approach not taken by the trial court—leads to the conclusion that the response was in substantial compliance with section 2033.220. (See *Freeman*, *supra*, 207 Cal.App.4th 791, 793 ["Substantial compliance with a statute is dependent on the meaning and purpose of the statute."])  The proposed response was verified by the party; contained responses to a majority (64) of the individual RFAs that were unquestionably Code-compliant; contained, as to at least most of the balance of the individual RFAs (41) meaningful, substantive responses; and was served well before the hearing (and, in fact, even before the deemed admitted Motion was filed).  Although St. Mary's proposed response may not have actually complied with all statutory requirements, such actual compliance is not required where the proposed response is facially a good-faith effort to respond to RFAs in a manner that is substantially Code-compliant.  (See *Costa*, *supra*, 37 Cal.4th at p. 1017, fn. 24.)  The Motion therefore should have been denied.[22]

Section 2033.290 authorizes a party propounding RFAs to seek further responses in the event he or she concludes that the individual responses received are legally

---

denial of RFA number 91 in her interrogatory response.)  If Schellenberg believes that St. Mary's response to this RFA, as phrased, is legally insufficient, the appropriate method of challenging it would be for him to seek an order compelling a further response under section 2033.290, which motion would be preceded by his attempting to resolve the dispute informally under subdivision (b).

[22] Our conclusion that the proposed response was substantially Code-compliant and therefore the Motion should have been denied does not suggest that there are no defects whatsoever with respect to any of the 41 responses to RFAs the court found deficient and ordered to be deemed admitted.  Indeed, St. Mary responded to several of the individual RFAs with "[u]ncertain."  We surmise that these responses are a denial based upon lack of information and belief; but if that is the case, they do not comply in full with the requirements of subdivision (d) of section 2033.220.  Our disposition of this proceeding does not preclude Schellenberg, on remand, from making a motion under section 2033.290, after appropriate meet and confer efforts are exhausted, to compel St. Mary to provide further responses to any of the RFAs he contends are not compliant with the Code of Civil Procedure.

insufficient. Real parties' argument in their reply below that St. Mary's proposed response included responses to certain specific RFAs that were deficient effectively transmuted their deemed admitted Motion into a motion to compel further responses under section 2033.290. The detriment to St. Mary from this shift was exacerbated by several factors: (1) real parties did not cite section 2033.290 in their Motion papers, and they assured the court at a conference held the day St. Mary filed her opposition that the Motion was a deemed admitted Motion and was not a motion to compel; (2) the court indicated at the same conference that it viewed the Motion as not addressing the content of the individual responses, and that any challenge to specific RFA responses would be the proper subject of a later motion to compel further responses;[23] and (3) the fact that real parties did not argue any particular deficiencies with respect to any individual RFA response until their reply papers were filed one week before the hearing, thereby precluding St. Mary from addressing such claims in her opposition. (See *Balboa Ins. Co. v. Aguirre* (1983) 149 Cal.App.3d 1002, 1010 ["points raised in a reply brief for the first time will not be considered unless good cause is shown for the failure to present them before"]; cf. *Plenger v. Alza Corp.* (1992) 11 Cal.App.4th 349, 362, fn. 8 [court's consideration of new matter presented in summary judgment reply not an abuse of discretion if opponent has notice and court gives him or her an opportunity to respond to it].)

Further compounding the problem, the court adopted real parties' position that the proposed response contained a number of responses to RFAs that were legally

---

[23] The court indicated at the conference: "This does not create a motion regarding the content of the admissions, what they said. Everything about [Schellenberg's] declaration and [the] notice [of Motion] is based on [real parties'] not receiving [the response] on time, and for that reason, having these [RFAs] deemed admitted."

23

insufficient.[24] The court deemed admitted 41 specific RFA responses that it concluded were not Code-compliant, rather than considering whether the proposed response to the Schellenberg RFAs as a whole substantially complied with section 2033.220—thereby effectively converting real parties' deemed admitted Motion under section 2033.280 into a motion to compel further responses under section 2033.290. The court is authorized by statute to deem particular requests admitted if the responding party fails to comply with an order compelling further responses to RFAs. (§ 2033.290, subd. (e).) Here, the court, at real parties' urging, *bypassed four steps* of the statutorily required process by deeming admitted the responses to 41 RFAs in St. Mary's proposed response: There was no prior (1) motion to compel further responses (§ 2033.290. subd (a)); (2) order compelling further responses; (3) noncompliance with an order compelling further responses; or (4) motion to deem specific RFAs admitted based upon noncompliance with a prior order compelling further RFA responses (*id.*, subd (d)).

In concluding that the court abused its discretion by misapplying section 2033.280 and effectively granting a motion under section 2033.290 that was never made, we cannot ignore the potentially drastic consequences to a civil litigant of having RFAs deemed admitted, given the fact that an RFA that is admitted is "conclusive in the action as to the party making it." (*Murillo*, *supra*, 143 Cal.App.4th at p. 736.) We do not read the statutes governing RFAs in a vacuum. The purpose of the RFA procedure is to expedite trials and to eliminate the need for proof when matters are not legitimately contested. (*Cembrook*, *supra*, 56 Cal.2d at p. 429; *Studll*, *supra*, 92 Cal.App.4th at p. 864.) The RFA device is not intended to provide a windfall to litigants. Nor is the RFA procedure a "gotcha" device in which an overly aggressive propounding party—who rejects facially

---

[24] In their reply papers, real parties made specific argument concerning claimed deficiencies with respect to 37 of the 41 RFA responses that the court ultimately found to be not in compliance with section 2033.220.

reasonable requests for a short discovery extension and thereafter files the wrong discovery motion after service of a slightly tardy proposed RFA response that is substantially Code-compliant—may obtain a substantive victory in the case by having material issues deemed admitted. RFAs are not to be deemed admitted unless the party to whom RFAs are propounded fails to respond prehearing to RFAs in a manner that is substantially Code-compliant (§ 2033.280, subd. (c)), or he or she is recalcitrant and violates a court order compelling further responses that are deficient (§ 2033.290, subd. (e)). Furthermore, the order deeming admitted the 41 RFAs, to the extent that it may substantially impact St. Mary's ability to prove her case, undermines public policy that promotes controversies being resolved through trials on the merits. (See *New Albertson's, Inc.*, *supra*, 168 Cal.App.4th at pp. 1420-1421 [court's discretion under § 2033.300 to grant party leave to withdraw or amend RFA responses based upon "mistake, inadvertence, or excusable neglect" must be exercised consistently with "the spirit of the law and in a manner that serves the interest of justice"; policy favoring trial on the merits dictates that any doubts be resolved in favor of party seeking relief].)

For these reasons, we conclude that the respondent court erred in granting the Motion by deeming admitted 41 of the Schellenberg RFAs.

C.     *Conclusion*

Although writ review of discovery rulings is generally disfavored (*O'Grady*, *supra*, 139 Cal.App.4th at p. 1429), the petition here challenges a trial court order that has the potential of curtailing or preventing St. Mary from proving her case, irrespective of the actual merits of her claims. In this instance, mandamus is appropriate, because the court's order potentially " 'prevent[s] a party from having a fair opportunity to litigate [her] . . . case [citation] . . .' " (*OXY Resources*, *supra*, 115 Cal.App.4th at p. 886.)

The proposed response to the Schellenberg RFAs, served four days late, was substantially Code-compliant. Because the order deeming admitted 41 RFAs propounded by Schellenberg was based upon an erroneous legal conclusion, it constituted an abuse of

25

discretion. (*Toshiba America*, *supra*, 124 Cal.App.4th at p. 768.) Furthermore, because St. Mary served her proposed responses to both sets of RFAs before the Motion was filed, the order, insofar as it awarded sanctions to real parties, was also improper. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶ 8:1377.2, p. 8G-28.) Accordingly, we will grant St. Mary's petition for writ of mandamus.

## DISPOSITION

Respondent superior court erred in its order deeming admitted 41 RFAs propounded by Schellenberg on St. Mary and by awarding sanctions in favor of real parties in interest. Accordingly, let a peremptory writ of mandate issue commanding respondent superior court to vacate its order insofar as it concerns St. Mary, and to enter a new order denying the Motion to deem admitted RFAs propounded by Schellenberg and Mills upon petitioner St. Mary, and denying real parties' motion for sanctions. Upon finality of this opinion, the temporary stay issued by this court is vacated. Statutory costs are awarded to petitioner.

_____

Márquez, J.

WE CONCUR:

_____

Premo, Acting, P.J.

_____

Elia, J.

St. Mary v. The Superior Court of California, Monterey County
No. H038918

| Trial Court: | Monterey County Superior Court |
| | Superior Court No.: M111895 |

Trial Judge:    The Honorable
                Kay T. Kingsley


Attorneys for Petitioner         Law Office of David M. Hollingsworth
Lisa St. Mary:
                                 David M. Hollingsworth



Real Parties in Interest         In pro. per.
Thomas Schellenberg and Katherine Mills:

St. Mary v. Superior Court; Schellenberg et al.
H038918