Filed 11/20/24

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KATHRYN BURTON,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>JENNIFER CAMPBELL et al.,<br><br>    Defendants and Respondents;<br><br>SAN DIEGO GAS & ELECTRIC COMPANY,<br><br>    Intervener and Respondent. | D081911<br><br>(Super. Ct. No. 37-2021-00026209-CU-WM-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Affirmed.

Aguirre & Severson, Michael J. Aguirre, Maria C. Severson and Elijah T. Gaglio for Plaintiff and Appellant.

Mara W. Elliot, City Attorney, M. Travis Phelps, Assistant City Attorney, Matthew Zollman and Tyler L. Krentz, Deputy City Attorneys, for Defendants and Respondents.

Gibson, Dunn & Crutcher, David A. Battaglia, Maurice Suh, James L. Zelenay, Jr., and Zachary C. Freund for Intervener and Respondent.

In 2021, the San Diego City Council (the City Council or Council) voted to approve a new set of franchise agreements that give San Diego Gas & Electric Company (SDG&E) the exclusive right to provide gas and electric services to San Diego's residents and businesses. Kathryn Burton, who resides in the city of San Diego (the City), filed a lawsuit against the City and the Council members who voted in favor of the agreements (collectively, the City defendants), seeking to declare the Council's approval of the agreements to be null and void. Burton's first cause of action alleged a violation of the Ralph M. Brown Act (Gov. Code,[1] § 54950 et seq.) (the Brown Act) based on the allegation that prior to approving the agreements, a majority of the Council members allegedly discussed, deliberated, and agreed on their votes in a "secret serial meeting," using the mayor as an intermediary.

Over Burton's opposition, the trial court permitted SDG&E to intervene as a defendant. Then, joined by the City defendants, SDG&E obtained summary judgment. On the Brown Act cause of action, summary judgment was based on Burton's failure to comply with section 54960.1, subdivision (b), which states that "[p]rior to any action being commenced . . . the district attorney or interested person shall make a demand of the legislative body to cure or correct the action."

On appeal, Burton challenges the trial court's adjudication of her Brown Act claim, contending that she *did* satisfy the demand requirement of section 54960.1. Burton relied on the demand letters sent by the person Burton *later* hired as her attorney in this lawsuit. Burton also challenges the trial court's order granting SDG&E's motion for leave to intervene. We

---

[1]    Unless otherwise indicated, all further statutory references are to the Government Code.

conclude that Burton's appeal lacks merit, and we accordingly affirm the judgment.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Since 1920, SDG&E has provided gas and electric services to the residents and businesses of the City through a series of franchise agreements. Under those agreements, SDG&E pays the City franchise fees in exchange for the exclusive right to use the public rights-of-way to install and maintain the equipment necessary to distribute gas and electricity. The most recent set of agreements commenced in December 1970 and, following a short extension, were set to expire in June 2021. In March of that year, the City's mayor issued invitations to bid on both franchises. SDG&E was the sole bidder. The City and SDG&E then negotiated the details of the new franchise agreements. San Diego City Charter, article VII, section 103 requires that the City's approval of a franchise agreement occur through an ordinance adopted by a two-thirds vote of the City Council. Accordingly, the introduction of ordinances approving the franchise agreements was placed on the agenda for a May 25, 2021 City Council meeting.

On May 21, 2021, attorney Maria Severson of Aguirre & Severson, LLP (Aguirre & Severson) sent a letter to the City Council alleging that its members engaged in a "secret serial meeting" in violation of section 54952.2, subdivision (b)(1) of the Brown Act with respect to the franchise agreements.[2] Severson quoted from an article published in the San Diego Union Tribune

---

[2] Section 54952.2, subdivision (b)(1) states: "A majority of the members of a legislative body shall not, outside a meeting authorized by this chapter, use a series of communications of any kind, directly or through intermediaries, to discuss, deliberate, or take action on any item of business that is within the subject matter jurisdiction of the legislative body."

3

stating that that the mayor and his staff had " 'met with all nine members of the San Diego City Council in the past few days, looking to win their support for a new electric and gas franchise agreement between the city and [SDG&E],' " and the mayor " ' "[hadn't] heard anyone say that they [were] a 'no' " ' " at that point. Severson interpreted the article to mean that the City Council members improperly used a series of private communications involving the mayor to discuss and decide to approve the franchise agreements.

Invoking section 54960.1, Severson demanded that the City Council "cure and correct" its open meeting violation "by taking the SDG&E franchise agreement award item off the agenda of the May 25, 2021 meeting, so as to avoid commencement of a legal action for judicial determination as to the violation of law." She warned that "any City Council approval of the resolution to award the electric utility franchise agreement to SDG&E will be null and void." Severson's letter was written on her law firm's letterhead, but Severson did not indicate she was writing on behalf of any client.

Despite Severson's letter, at its May 25, 2021 meeting the City Council went forward with the agenda item concerning the introduction of the proposed ordinances approving the franchise agreements. Specifically, after listening to the mayor's presentation and comments from the public, the Council took an initial vote of two-thirds in favor of adopting the ordinances.

The next day, May 26, 2021, Severson sent another letter to the City Council. Severson stated that the actions taken at the May 25, 2021 meeting regarding the franchise agreements were "the result of a series of acts done with the intent to develop a secret concurrence among a supermajority of the Council well in advance of any public consideration or action on this matter" in violation of the open meeting requirements of the Brown Act. She

4

demanded that the City Council "rescind the resolutions as the appropriate cure for the illegal action," and again she stated that "resolutions" approving the franchise agreement would be "null and void." Severson concluded the letter by stating that she was making a demand "pursuant to . . . [section] 54960.1" that the City Council "cure and correct" the violation, and she advised that "the failure to cure and correct the unlawful actions by vote will be subject to a legal action in Superior Court." Again, Severson did not say that she was writing on behalf of any client.

At a meeting on June 8, 2021, the City Council finally adopted, by a two-thirds vote, the proposed ordinances to approve the franchise agreements with SDG&E. Three days later, the franchise agreements took effect as San Diego County Ordinance Nos. O-21327 and O-21328.

In early June 2021, Burton retained Aguirre & Severson to represent her. On June 16, 2021, Burton filed a "Petition for Writ of Mandate, Prohibition, or Other Extraordinary Relief [CCP] §§ 1060, 1085]; Complaint for Declaratory and Injunctive Relief; Action to Void Past Acts of the City of San Diego City Council Adopting Franchise Agreements [Govt Code §§ 54960, 54960.1]" against the City and the six Council members who voted to approve the ordinances (the Petition/Complaint). (Capitalization omitted; brackets in original.)

The Petition/Complaint pled three causes of action. The first cause of action alleged that the City defendants violated section 54952.2, subdivision (b)(1)) of the Brown Act by meeting with the mayor "outside a noticed public City Council meeting, using a series of communications – directly or through intermediaries, to discuss, deliberate and take action on the franchise agreements that later went before the City Council in a public meeting on May 25, 2021 and June 8, 2021." The Petition/Complaint stated that

5

"Petitioners [*sic*] through legal counsel wrote to" the City Council members "advising of the serial meeting violations and demanding such violations be cured." It then quoted substantial portions of the letters that Severson sent to the City Council on May 21 and May 26, 2021. For the Brown Act cause of action, the Petition/Complaint sought an order declaring that the City defendants violated the Brown Act and deeming their approval and adoption of the franchise agreements "null and void," as well as an injunction prohibiting the City defendants from implementing the related ordinances. The second and third causes of action, which are not at issue in this appeal, alleged violations of San Diego City Council Rule 2.4.3 and San Diego City Charter, article XV, section 275.

Shortly after Burton filed the Petition/Complaint, SDG&E filed a motion for leave to intervene in the litigation as a defendant. Over Burton's opposition, the trial court granted SDG&E leave to intervene.

SDG&E then filed a motion for summary judgment, which the City defendants joined. As relevant here, the challenge to the Brown Act claim was based on Burton's failure to comply with the prelitigation demand requirement set forth in section 54960.1, subdivision (b). The motion for summary judgment argued that the uncontroverted evidence established that Severson did not send her demand letters on behalf of Burton, and therefore Burton could not rely on those letters to show compliance with the demand requirement. The trial court granted the motion for summary judgment, concluding that Burton failed to comply with the demand requirement of section 54960.1 and that she lacked standing to bring the second and third causes of action.

Burton appeals from the judgment.

6

II.

DISCUSSION

In her challenge to the summary judgment on the Brown Act cause of action, Burton contends the trial court erred in concluding that she failed to comply with the demand requirements of section 54960.1. She also contends the trial court erred in granting SDG&E leave to intervene. We address those contentions in turn.

A. *Summary Judgment Was Properly Granted Because Burton Failed to Comply With the Demand Requirement of Section 54960.1*

1. *Legal Standard for Summary Judgment Motions*

Under Code of Civil Procedure section 437c, subdivision (c), a motion for summary judgment shall be granted if all the papers submitted show there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. A defendant meets its burden on summary judgment by showing that the plaintiff cannot prove its causes of action, or by establishing a complete defense to the plaintiff's causes of action, after which the burden then shifts to the plaintiff to show a triable issue of fact material to the causes of action or defense. (*Id.*, subd. (p)(2).) We apply a de novo standard of review to a ruling on a motion for summary judgment. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.)

2. *The Presuit Demand Requirement of Section 54960.1*

The Brown Act is a statutory acknowledgment that local government "exist[s] to aid in the conduct of the people's business" and that the people are entitled to "remain[ ] informed so that they may retain control over the instruments they have created." (§ 54950.) With limited exceptions, the Brown Act mandates that all meetings of local legislative bodies, such as city councils (see §§ 54951, 54952, subd. (a)), be "open and public" (§ 54953, subd. (a)). For purposes of the Brown Act, a " 'meeting' " is "any congregation of a

majority of the members of a legislative body at the same time and location . . . to hear, discuss, deliberate, or take action on any item that is within the subject matter jurisdiction of the legislative body." (§ 54952.2, subd. (a).) Under section 54953, subdivision (a), "[m]eetings, as so defined, are prohibited unless they are 'open and public.'" (*Olson v. Hornbrook Community Services Dist.* (2019) 33 Cal.App.5th 502, 514 (*Olson*).)

"Of course the intent of the Brown Act cannot be avoided by subterfuge . . . ." (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 376 (*Roberts*).) Section 54952.2, subdivision (b)(1) of the Brown Act specifically forbids "[a] majority of the members of a legislative body" from "us[ing] a series of communications of any kind, directly or through intermediaries, to discuss, deliberate, or take action on any item of business that is within the subject matter jurisdiction of the legislative body" outside of an authorized meeting. (§ 54952.2, subd. (b)(1).) For example, "collective deliberation on public business through a series of letters or telephone calls passing from one member of the governing body to the next would violate the open meeting requirement." (*Roberts*, at p. 376.) Similarly, it would be a violation for a majority of members to use a "go-between" to exchange information regarding an item of business. (See *Page v. MiraCosta Community College Dist.* (2009) 180 Cal.App.4th 471, 503–504.)

Burton's Petition/Complaint specifically alleged a violation only of section 54952.2, subdivision (b)(1), contending that the Council members violated that provision because, outside of a public meeting, they improperly engaged in a "series of communications" regarding the SDG&E franchise agreements, using the mayor as an "intermediary." The Petition/Complaint did not specifically identify the open meeting requirements of section 54953 as one of the Brown Act provisions that the City defendants violated.

8

However, because section 54952.2, subdivision (b)(1), in substance, serves to define one type of activity that will be considered a "meeting" subject to the open meeting requirements of section 54953, we understand the Petition/Complaint to *also* have impliedly alleged a violation of section 54953, which states that, except as otherwise provided, "[a]ll meetings of the legislative body of a local agency shall be open and public." (§ 54953, subd. (a).)

A person alleging a legislative body has violated the open meeting requirements of section 54953 may bring suit to have an action taken in violation of section 54953 declared null and void. Specifically, section 54960.1, subdivision (a) states, "The district attorney or any interested person may commence an action by mandamus or injunction for the purpose of obtaining a judicial determination that an action taken by a legislative body of a local agency in violation of Section 54953 [or other enumerated provisions] . . . is null and void under this section."[3] (§ 54960.1, subd. (a).) However, as set forth in section 54960.1, subdivision (b), before suit is filed, a demand to cure and correct must be made: "Prior to any action being commenced pursuant to subdivision (a), the district attorney or interested person shall make a demand of the legislative body to cure or correct the action . . . . The demand shall be in writing and clearly describe the challenged action of the legislative body and nature of the alleged violation." (§ 54960.1, subd. (b).)

When a violation of section 54953 is alleged, the demand to cure or correct must be made within 90 days from the date the challenged action was

---

[3] "Interested person" has been construed broadly to mean any citizen of the State of California. (*McKee v. Orange Unified School Dist.* (2003) 110 Cal.App.4th 1310, 1312.)

9

taken. (§ 54960.1, subd. (c)(1).) "Within 30 days of receipt of the demand, the legislative body shall cure or correct the challenged action and inform the demanding party in writing of its actions to cure or correct or inform the demanding party in writing of its decision not to cure or correct the challenged action." (*Id.*, subd. (c)(2).) "If the legislative body takes no action within the 30-day period, the inaction shall be deemed a decision not to cure or correct . . . ." (*Id.*, subd. (c)(3).) "Within 15 days of receipt of the written notice of the legislative body's decision to cure or correct, or not to cure or correct, or within 15 days of the expiration of the 30-day period to cure or correct, whichever is earlier, the demanding party shall be required to commence the action pursuant to subdivision (a) or thereafter be barred from commencing the action." (*Id.*, subd. (c)(4).)

3. *Burton Did Not Comply With the Demand Requirement of Section 54960.1*

Here, it is undisputed that Burton did not personally submit to the City Council any written demand to cure or correct. Severson sent the two demand letters to the Council members on May 21 and May 26, 2021, but those letters did not mention Burton. When Burton was deposed in the course of this litigation, she admitted that she was not involved with preparing Severson's demand letters. Burton did not discuss the letters with Aguirre & Severson before they were sent, and she did not see them until sometime later. Burton confirmed that Aguirre & Severson was not "acting

10

as [her] counsel in connection with" the letters. She retained the firm "a couple of weeks" before the Petition/Complaint was filed on June 16, 2021.[4]

Despite her lack of participation in Severson's demand letters, Burton presents several arguments in support of her contention that she complied with the demand requirement of section 54960.1.[5]

a. *Statutory Interpretation Argument*

First, Burton argues that the statute does not require that the person filing a lawsuit under section 54960.1 be the *same* person who makes the demand to cure or correct. By selectively quoting from section 54960.1, Burton contends that the statute requires only that "an 'interested person' " make a demand, which was satisfied here because Severson was an interested person.

---

[4] Burton did not disclose the exact date of retention. At the motion hearing, the trial court asked her counsel—Michael Aguirre of Aguirre & Severson—whether the firm represented her when the demand letters were sent. Aguirre stated that "she and I were working together" and that "she was very, very active with a group of us that were following this together." Aguirre "had a confidential relationship" with Burton but he "[did not] know if [he] would call her a client" at that time.

[5] Burton points out that neither SDG&E nor the City defendants specifically raised in their answers the fact that Burton failed to comply with the demand requirements of section 54960.1 To the extent Burton intends to claim that SDG&E and the City defendants forfeited that issue because it was not identified in their answers, the argument fails. To state a claim under section 54960.1, it is the plaintiff's burden to plead and prove compliance with the prelitigation demand requirement of section 54960.1. (*Olson*, *supra*, 33 Cal.App.5th at p. 517.) Accordingly, noncompliance is not an affirmative defense that a defendant must plead or else forfeit. (Cf. *Wood v. Riverside General Hospital* (1994) 25 Cal.App.4th 1113, 1119 [defendant did not forfeit its right to assert noncompliance with the prelitigation claim requirement under the Government Claims Act (formerly called the Tort Claims Act) by failing to plead noncompliance].)

11

Burton's argument fails because it is contrary to the plain language of the statute. Section 54960.1, subdivision (a) permits "*any* interested person" to commence an action, but subdivision (b) requires "*the* . . . interested person" to "make a demand of the legislative body to cure or correct" the alleged violation. (Italics added.) Subdivision (c)(4), in turn, states that "*the* demanding party" must file suit within 15 days. (Italics added.) Thus, a person may bring an action seeking relief under section 54960.1 only if that *same person* makes a demand to cure and correct before filing suit.

b. *Ratification Argument*

Next, Burton argues that she satisfied the demand requirement of section 54960.1 because she "fully adopted, authorized[,] and ratified" Severson's letters in her verified Petition/Complaint. According to Burton, that ratification occurred because the Petition/Complaint alleged that "through counsel" Burton had written the demand letters sent by Severson on May 21 and May 26, 2021, and it quoted those letters verbatim.

We reject Burton's attempt to rely of the doctrine of ratification because it is undisputed that Severson did not represent Burton when she sent the letters and did not send them on Burton's behalf. " 'Ratification is the voluntary election by a person to adopt in some manner as [their] own an act *which was purportedly done on [their] behalf by another person*, the effect of which, as to some or all persons, is to treat the act as if originally authorized by [them]." (*Cavey v. Tualla* (2021) 69 Cal.App.5th 310, 339, fn. 9, italics added.) " '[S]ince ratification contemplates an act by one person [o]n behalf of another, there must exist at the time the unauthorized act was done a relationship, either actual or assumed, of principal and agent, between the person alleged to have ratified and the person by whom the unauthorized act was done.' " (*Anderson v. Fay Improvement Co.* (1955) 134 Cal.App.2d 738,

12

748.)  " '[T]here can be no ratification if the person who performed the unauthorized act did not at the time profess to be an agent.' " (*Ibid*.; accord, *Emery v. Visa Internat. Service Ass'n* (2002) 95 Cal.App.4th 952, 961 ["A principal cannot ratify the act of the alleged agent, unless the 'agent' purported to act on behalf of the principal."].)

Neither Burton nor her counsel claimed an attorney-client relationship (an actual agency relationship) at the time the demand letters were sent. Severson's letters did not mention Burton or any unnamed client, and Severson did not submit a declaration suggesting that she had, in fact, sent the letters on behalf of Burton.  Aguirre submitted a declaration stating that the "[l]etters were sent to protect the overall interests of the concerned citizens with whom [Aguirre and Severson] were working on these issues."[6] But this vague claim that the firm wrote on behalf of "concerned citizens" generally is insufficient to establish that Severson was acting or purporting to act on behalf of Burton specifically.  And for her part, Burton denied in her deposition that the firm was acting as her counsel in writing the letters. Simply put, a ratification theory does not fit the circumstances here.

c.      *Substantial Compliance Argument*

Finally, for the first time in her appellate reply brief Burton contends that she has "substantially complied" with the demand requirement of section 54960.1 because Severson's letters brought the alleged Brown Act violation to the attention of the City defendants.  " 'Where a reasonable attempt has been made to comply with a statute in good faith, . . . the doctrine of substantial compliance holds that the statute may be deemed satisfied. . . .' . . . 'Substantial compliance means " '*actual* compliance in

---

[6]     SDG&E filed evidentiary objections to statements in Aguirre's declaration, but the trial court did not rule on them.

respect to the substance essential to every reasonable objective of the statute,' as distinguished from 'mere technical imperfections of form' " ' " (*People v. Green* (2004) 125 Cal.App.4th 360, 371, citations omitted.) The doctrine has been applied in numerous disparate legal contexts, including in assessing a plaintiff's compliance with the Government Claims Act (§ 900 et seq.), which, like section 54960.1, requires that a party give notice to a public entity prior to filing suit (§ 945.4). (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 456-457 (*City of San Jose*).) In *Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 684, this court applied the doctrine to the procedural requirements of section 54960.1, concluding that the plaintiff there "substantially complied with the statute," even though she filed her lawsuit less than 30 days after sending a demand letter to the legislative body.

We reject Burton's attempt to rely on the doctrine of substantial compliance for two independent reasons. First, the argument was not raised until Burton's appellate reply brief, and it is therefore forfeited. (*LNSU #1, LLC v. Alta Del Mar Coastal Collection Community Association* (2023) 94 Cal.App.5th 1050, 1070 ["An appellant may not put off to its reply brief the presentation of a legal argument supporting a claim of error asserted in its opening brief, for to do so would unfairly deprive the respondent of the ability to rebut the argument."].)[7]

---

[7] Although Burton's opening appellate brief broadly discussed the idea that the City defendants incurred no prejudice due to the fact that it was Severson, rather than Burton, who sent the demand letters, that brief never attempted to tie that discussion to the doctrine of substantial compliance. Further, respondents did not perceive Burton as having made a substantial compliance argument, as they did not address the issue in their respondents' brief.

14

Second, even were we to consider the doctrine of substantial compliance, the doctrine is inapplicable here because Burton made no attempt *whatsoever* to comply with section 54960.1. " '[S]ubstantial compliance cannot be predicated upon no compliance.' " (*City of San Jose, supra,* 12 Cal.3d at p. 456.) "Where there has been *an attempt to comply* but the compliance is defective, the test of substantial compliance controls. . . . However, it has repeatedly been held that ' "[s]ubstantial compliance cannot be predicated upon no compliance.' " [Citations] Thus, [plaintiff's] failure to allege that she filed *any claim*, defective or otherwise, would appear to preclude her from invoking the doctrine of substantial compliance." (*Pacific Tel. & Tel. Co. v. County of Riverside* (1980) 106 Cal.App.3d 183, 188, italics added.)

At the time she filed her lawsuit, Burton still had ample time to send her own demand letter to comply with section 54960.1. (§ 54960.1, subd. (c)(1) ["The written demand shall be made within 90 days from the date the action was taken . . .].) Instead, she made no attempt to do so, in complete disregard of the statutory requirements. Because "[t]he doctrine of substantial compliance . . . cannot . . . remedy a plaintiff's failure to comply meaningfully with the statute" (*Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1083) and applies only "where claimant has made a bona fide attempt to comply" (*Stromberg, Inc. v. Los Angeles County Flood Control Dist.* (1969) 270 Cal.App.2d 759, 762), Burton's failure to attempt *any* meaningful compliance precludes her from relying on the doctrine of substantial compliance.[8]

8    In connection with her contention that she substantially complied with the demand requirement of section 54960.1 Burton points to the provision of the California Constitution stating that "[a] statute, court rule, or other

In sum, Burton's challenge to the trial court's order granting summary judgment on the Brown Act cause of action lacks merit. Because Burton failed to make a demand to cure and correct as required by section 54960.1, the trial court properly granted the motion.

B.     *Because We Are Affirming the Judgment, Burton's Challenge to the Order Granting SDG&E Leave to Intervene Is Moot*

Burton next argues that the trial court erred in allowing SDG&E to intervene in this case. A ruling on a motion for permissive intervention is reviewed under an abuse of discretion standard. (*City of Malibu v. California Coastal Com.* (2005) 128 Cal.App.4th 897, 902.)

As respondents point out, because we are affirming the judgment, there is no need for us to address whether the trial court abused its discretion in granting SDG&E's motion for leave to intervene. Because both the City defendants and SDG&E were parties to the summary judgment motion (due to the City defendants' joinder in SDG&E's motion), that motion was properly before the trial court regardless of whether SDG&E should have been part of this litigation. Unless we were to reverse the judgment and remand for further proceedings, there would be no practical consequence to a decision

_____

authority, including those in effect on the effective date of this subdivision, shall be broadly construed if it furthers the people's right of access [to information concerning the conduct of the people's business], and narrowly construed if it limits the right of access." (Cal. Const., art. I, § 3, subd. (b), par. (2).) That provision has no application here because it comes into play only "when a court is confronted with resolving a statutory ambiguity." (*POET, LLC v. State Air Resources Bd.* (2013) 218 Cal.App.4th 681, 750). It gives us "no power to disregard the plain language of [a] statute. (*Alvarez v. Superior Court* (2007) 154 Cal.App.4th 642, 657.) Nor would we, as a court of law, consider doing so. As we have explained, section 54960.1 plainly states that before a party brings an action, *that party* must make a timely demand of the legislative body to cure or correct the action. Burton made no attempt to comply with those plain statutory requirements and thus cannot rely on the doctrine of substantial compliance.

16

that the trial court abused its discretion in granting SDG&E's motion for leave to intervene.

A challenge is "moot when the decision of the reviewing court 'can have no practical impact or provide the parties effectual relief.' " (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 214.) Because we are affirming the judgment, an appellate decision on whether the trial court erred in granting SDG&E's motion for leave to intervene would have no practical effect. Burton's challenge to the order granting SDG&E leave to intervene is accordingly moot, and we do not address it.

## DISPOSITION

The judgment is affirmed. Respondents are awarded their costs on appeal.

IRION, J.

I CONCUR:


O'ROURKE, Acting P. J.

17

Dato, J., Dissenting

This case concerns the Ralph M. Brown Act (Brown Act) (Gov. Code,[1] § 54950 et seq.), sometimes referred to as California's open meeting law. (See, e.g., *Hernandez v. Town of Apple Valley* (2017) 7 Cal.App.5th 194, 207.) The law is designed to ensure that, in conducting "the people's business," the actions of public agencies in this state "be taken openly and that their deliberations be conducted openly." (§ 54950.) It authorizes "any interested person" to file a petition for writ of mandate seeking a judicial determination that the legislative body of a local government agency has violated the open meeting law. (§ 54960.1, subd. (a).) Included among its provisions is a prelitigation notice requirement. Before a citizen can bring a Brown Act challenge, they must send a letter to the public entity explaining the nature of the alleged open meeting law violation and giving the entity an opportunity to correct the perceived error. (See § 54960.1, subd. (b).)

Here, we confront a single, straightforward legal issue regarding that notice requirement. Where a fully compliant cure-and-correct letter detailing an alleged Brown Act violation has already been sent to the public entity by someone else—here, an attorney the plaintiff would shortly thereafter retain—is the plaintiff required to send another duplicative letter before filing her lawsuit? Or does she substantially comply with the notice requirement by including an express reference to the existing and already-received letter in her mandate petition, indicating she is relying on that letter to satisfy the statute? Because the only purpose of the statute—to give a legislative body an opportunity to cure or correct an alleged open meeting

_____

[1]     All undesignated statutory references are to the Government Code.

violation—was fully served in this case, I respectfully dissent from the majority opinion's conclusion that this action is procedurally barred.

A

The facts are simple and undisputed. A few days before the City of San Diego (City) through its legislative body, the City Council, was to first consider approving new franchise agreements with San Diego Gas & Electric (SDG&E), attorney Maria Severson sent a cure-and-correct letter to the City alleging a "secret serial meeting" violation of the Brown Act. (§ 54952.2, subd. (b)(1).) There is no dispute that Severson's letter was timely and provided the City with all necessary information to comply with the prelitigation notice requirement.[2] (§ 54960.1, subd. (b) ["The demand shall be in writing and clearly describe the challenged action of the legislative body and nature of the alleged violation."].)

The City ignored Severson's letter and made no attempt to correct the alleged Brown Act violation. The City Council eventually approved the new franchise agreements several weeks later. Thus, after waiting the required 30 days for a response, Severson could have filed a lawsuit on her own behalf and there would be no question she had fully complied with section 54960.1.

But that's not what happened. Rather, plaintiff Kathryn Burton decided to retain Severson and her firm to file a Brown Act lawsuit. To comply with section 54960.1, Severson could have copied verbatim and re-sent her earlier cure-and-correct letter, adding only the words "on behalf of

---

[2] Severson sent a second letter the day after the City Council took a preliminary vote but before it finally approved the new franchise agreements in which she repeated her demand that the City cure the alleged Brown Act violation. Because her first letter provided all the information necessary to understand the claimed violation, for the sake of simplicity I will refer to a single letter.

2

Kathryn Burton." She could have drafted a succinct new letter, incorporating her earlier letter by reference and making the identical demand on behalf of Burton. Either would have plainly sufficed to meet the statutory requirement. Instead, however, she chose to truncate the process by filing a petition for writ of mandate on Burton's behalf in which she indicated Burton was relying on Severson's earlier letter, quoting it extensively.

B

The question we must decide is whether Severson's cure-and-correct letter, sent before Burton retained Severson's firm as counsel, coupled with the express reference to the letter in Burton's petition, constitutes the necessary "substantial compliance" with the prelitigation notice requirement in section 54960.1. For me, if "substantial" is meant to refer to substance as distinguished from form, the answer is clearly yes.

As a preliminary matter, substantial compliance is the test we must apply to determine whether the requirements of the statute have been satisfied. After all, substantial compliance with statutory requirements is the general rule; strict compliance is a narrow exception. "Unless the intent of a statute can only be served by demanding strict compliance with its terms, substantial compliance is the governing test." (*County of Tulare v. Campbell* (1996) 50 Cal.App.4th 847, 853.) Indeed, as the majority opinion recognizes, this court has previously required only substantial compliance with section 54960.1's prelitigation notice requirement. (*Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 684 (*Bell*).) Neither the City nor SDG&E has offered a compelling reason for us to depart from this general rule or our decision in *Bell*.

3

As a result, I am somewhat confused by the majority opinion's suggestion that we need not consider whether Burton substantially complied with the prelitigation notice requirement on grounds that it was not raised until the reply brief. Burton's primary argument on appeal is that she adequately complied with the statute and substantial compliance is the established governing standard. Our role requires that we apply the governing legal standard to the facts of the case. I see no basis to invoke principles of forfeiture.

In any event, it would be unfair to conclude that Burton waited until the reply brief to argue she substantially complied with section 54960.1. It may be true that the literal words "substantial compliance" do not appear in the opening brief, but the substance of the argument is made. Burton's opening brief warned against an unduly "narrow interpretation of the Brown Act." After noting that her petition expressly relied on Severson's letter, Burton articulated why her actions substantially complied with the notice requirement, even if she didn't use that precise label:

> "SDG&E has not provided any facts suggesting the City was in anyway prejudiced. . . . The purpose of cure or correct demand is to give the City a chance to rectify the Open Meeting law violation. The procedure followed gave the City the full and complete benefit of the cure or correct demand requirement."

She reprised the same substantive argument in her reply brief, this time under the heading, "Summary Judgment Was Not Appropriate Because There Was Substantial Compliance With the Brown Act." (Some capitalization omitted.)

## C

As Presiding Justice Gilbert has cogently observed, "[s]ubstantial compliance with a statute is dependent on the meaning and purpose of

4

the statute." (*Freeman v. Vista de Santa Barbara Associates LP* (2012) 207 Cal.App.4th 791, 793.) It only requires compliance "in respect to the substance essential to every reasonable objective of the statute" (*Stasher v. Harger-Haldeman* (1962) 58 Cal.2d 23, 29), which simply means that "each objective or purpose of a statute must be achieved in order to satisfy the substantial compliance standard." (*Costa v. Superior Court* (2006) 37 Cal.4th 986, 1017, fn. 24.) Accordingly, we must focus on the meaning and purpose of section 54960.1.

The description of prelitigation notice requirement in section 54960.1, subdivision (b) makes its purpose self-evident. It is to give the legislative body notice of an alleged violation of the Brown Act so that it can avoid litigation by curing the violation. Here, Severson's letter timely provided the City with all the necessary information to cure the alleged violation if it chose to do so. And by expressly referring to (and quoting) it, Burton made clear she was relying on Severson's letter, eliminating any possible confusion that she might be alleging a *different* Brown Act violation. Thus, every substantive "objective or purpose" of the statute was achieved. Indeed, when pressed at oral argument, neither the City nor SDG&E could identify any reason, hypothetical or otherwise, why the City would respond differently or more positively to a letter written "on behalf of Burton" than it did to Severson's letter. In my view, the City's inability to answer this question leads to the ineluctable conclusion that the alleged lack of compliance made no substantive difference and establishes substantial compliance as a matter of law.

Moreover, finding that Burton substantially complied with the prelitigation notice requirement furthers broader policy objectives. The Brown Act is one of several statutes adopted to implement the public's

5

constitutional "right of access to information concerning the conduct of the people's business" and the requirement that "the meetings of public bodies . . . shall be open to public scrutiny."  (Cal. Const., art. 1, § 3, subd. (b)(1).)  By constitutional directive, such implementing statutes "shall be broadly construed [to] further[ ] the people's right of access."  (*Id.*, art. 1, § 3, subd. (b)(2); *Preven v. City of Los Angeles* (2019) 32 Cal.App.5th 925, 930 ["As a remedial statute, we construe the Brown Act liberally to accomplish its purpose, and 'suppress the mischief at which it is directed.' "].)  A prelitigation notice provision, like similar advance claim requirements, creates a procedural hurdle that interferes with citizens' abilities to enforce their rights and limits the salutary effects of remedial statutes.  It exists to achieve a precise purpose, but it should not be construed to preclude a hearing on the merits of the underlying claim where, as here, that purpose has been fully satisfied.  (See *Minsky v. Los Angeles* (1974) 11 Cal.3d 113, 123 ["So long as the policies of the claims statutes are effectuated, they should be given a liberal construction to permit full adjudication on the merits."].)

Accordingly, I would reverse the summary judgment in favor of the City and SDG&E, and remand for further proceedings on the merits of Burton's Brown Act claim.

DATO, J.