[No. B230066. Second Dist., Div. Six. July 10, 2012.]

JESSICA FREEMAN, Plaintiff and Respondent, v.
VISTA DE SANTA BARBARA ASSOCIATES, LP, Defendant and Appellant.

[blacked out]

## Counsel

Hart, King & Coldren, Robert S. Coldren, Robert G. Williamson, Jr., and Daniel T. Rudderow for Defendant and Appellant.

Cohn Stewart and Martin P. Cohn for Plaintiff and Respondent.

## Opinion

**GILBERT, P. J.**—Substantial compliance with a statute is dependent on the meaning and purpose of the statute.

This appeal arises under the Mobilehome Residency Law (MRL), Civil Code section 798 et seq. Defendant, a mobilehome park, appeals a judgment

for damages against it measured by the difference between the rent charged by the park and the rent allowed by city ordinance.[1]

Section 798.21, subdivision (a) states that a mobilehome space is exempt from a local rent control ordinance if the space is not the principal residence of the homeowner. Subdivision (f) of the section provides for exceptions. The trial court found the homeowner qualified under two exceptions: the park prohibits subletting and the homeowner is actively marketing her mobilehome for sale. We affirm.

## FACTS

Vista de Santa Barbara Associates, LP (Vista), owns a mobilehome park in the City of Carpinteria. Vista rents spaces in its park to mobilehome owners. The park is subject to the city's rent control ordinance.

Jessica Freeman leases space 93 in the park for her mobilehome. The mobilehome is not her principal residence. She entered into her lease on November 10, 2003. Her lease and the park rules expressly prohibited subletting her space.

On January 8, 2009, Vista sent written notice to all park residents, including Freeman. The notice stated that all residents had been sent a copy of new rules and regulations for the park. It gave notice of a "meet and consult" meeting with management and the residents regarding the "proposed amendments" to the rules. The notice stated that the residents were not required to attend.

The proposed rules consisted of 19 pages. Among the proposed rule changes is a provision allowing mobilehome owners to sublet with the prior written consent of Vista. The rule sets forth a multistep process for obtaining Vista's consent, including the sublessee's submission of a credit report.

Freeman received a copy of the proposed rules and notice of the "meet and consult" meeting. Freeman did not attend the meeting. Nor did she consent to the proposed rules.

As a result of the "meet and consult" meeting, some of the proposed rules were modified. The proposed new rule allowing subleasing, however, was not modified. Vista adopted the new proposed rules. But Vista failed to send Freeman notice that the proposed rules had been adopted.

---

[1] All statutory references are to the Civil Code.

On March 31, 2008, Vista sent a letter to Freeman advising her that because her mobilehome was not her principal residence, it was exempt from rent control. The letter further advised her the rent would be raised from $610 to $910 per month.

On June 10, 2008, Freeman, through her attorney, gave Vista written notice that she was placing her home on the market for sale. Around June 10, 2008, she put a "for sale" sign in the window of her mobilehome under the limitations imposed by park rules. The management office placed a sticker over her space on a map, indicating her mobilehome was for sale. Shortly thereafter, management removed the map. Freeman fielded at least 35 telephone calls from interested people. Juan and Kimberly Kim submitted a written offer with a deposit, but the transaction was not consummated. Five real estate agents who specialized in mobilehomes walked through her property.

In the meantime, Freeman had been tendering $604.82 per month, the rent controlled rate. On October 23, 2008, Vista served Freeman with a three-day notice to pay rent or quit. The notice demanded rent at the noncontrolled rate of $910. Freeman paid the $910 per month under protest.

Freeman filed the instant complaint for declaratory relief, injunction and damages. After a bench trial, the court found that the Carpinteria rent control ordinance applied to Freeman's lease of space 93. The court ordered Vista to pay damages measured by the difference between the controlled rent and the amount Freeman paid.

## DISCUSSION

### I

Section 798.21, subdivision (a) provides in part: "[I]f a mobilehome space within a mobilehome park is not the principal residence of the homeowner . . . , it shall be exempt from any ordinance . . . by any city, . . . which establishes a maximum amount that the landlord may charge a tenant for rent."

Subdivision (f)(1) and (2) of section 798.21 provide in part: "This section does not apply under any of the following conditions: [¶] (1) The homeowner is unable to rent or lease the mobilehome because the owner or management of the mobilehome park in which the mobilehome is located does not permit, or the rental agreement limits or prohibits, the assignment of the mobilehome or the subletting of the park space. [¶] (2) The mobilehome is being actively held available for sale by the homeowner . . . . A homeowner . . . attempting

to sell a mobilehome shall actively market and advertise the mobilehome for sale in good faith to bona fide purchasers for value in order to remain exempt pursuant to this subdivision."

It is undisputed that Freeman's mobilehome was never her principal residence. Thus the question is whether either of the exceptions contained in section 798.21, subdivision (f)(1) and (2) apply. The trial court found they did.

## II

Vista contends Freeman does not qualify for the subleasing exception.

■ Section 798.21, subdivision (f)(1) allows an owner whose mobilehome is not her principal residence to be covered by a local rent control ordinance where the rental agreement "limits or prohibits" the subletting of the park space.

Freeman's original lease prohibits subletting without exception. The new rule allows subletting with the prior written consent of the landlord. But because park management failed to give the required notice, the new rule does not apply to Freeman.

Section 798.25, subdivision (b) provides in part: "[F]ollowing the meeting and consultation with the homeowners, the noticed amendment to the park's rules and regulations may be implemented, as to any homeowner, with the consent of that homeowner, or without the homeowner's consent upon written notice of not less than six months . . . ." Here it is undisputed Freeman did not consent to the new rules, and Vista did not give her written notice under subdivision (b).

Vista argues that it substantially complied with the notice requirement. Section 798.25, subdivision (a) provides in part: "[W]hen the management proposes an amendment to the park's rules and regulations, the management shall meet and consult with the homeowners in the park, their representatives, or both, after written notice has been given to all the homeowners in the park 10 days or more before the meeting."

■ Vista claims the notice it gave Freeman pursuant to section 798.25, subdivision (a) substantially complies with the notice requirement of subdivision (b) of the section. It cites *Cal-Air Conditioning, Inc. v. Auburn Union School Dist.* (1993) 21 Cal.App.4th 655 [26 Cal.Rptr.2d 703], for the proposition that a party has substantially complied when every reasonable objective of the statute has been satisfied.

■ But the notice requirement of section 798.25, subdivision (a) has a different objective than the notice requirement of subdivision (b). Subdivision (a) requires notice of the proposed rules and of a "meet and consult" with the homeowners. The "meet and consult" requirement contemplates that the proposed rules might change, not that they necessarily will. Subdivision (b) of the section requires notice after the "meeting and consultation" of what rules are in fact implemented. It begins the six-month period running for those homeowners who do not consent to the new rules. Failure to give the notice required by subdivision (b) is as a matter of law not substantial compliance with the statute.

Vista argues no notice pursuant to section 798.25, subdivision (b) was necessary because the rule change expanded her rights by allowing her to sublease. Vista relies on *Rancho Santa Paula Mobilehome Park, Ltd. v. Evans* (1994) 26 Cal.App.4th 1139, 1146–1147 [32 Cal.Rptr.2d 464]. There we held that a retroactive application of a rule prohibiting subleasing violated the MRL's purpose of preventing actual or constructive eviction. Vista asserts that a rule change allowing Freeman to sublease does not put her in danger of eviction, particularly because she has stated she has no desire to sublease.

■ But *Rancho Santa Paula Mobilehome Park* does not concern the notice requirement of section 798.25, subdivision (b). Subdivision (b) does not distinguish between rules that may place a tenant in danger of eviction and rules that would not.

Moreover, Vista's argument ignores its claim that the effect of the rule change is not limited to expanding Freeman's right to sublease. Vista claims the change in the rules frees Freeman's space from rent control, allowing it to increase her rent. The ability of Vista to raise the rent can hardly be described as an expansion of Freeman's rights that will not place her in danger of eviction.

Vista argues the 90-day notice requirement of section 798.21, subdivision (e) controls over the notice requirement of section 798.25, subdivision (b).

Section 798.21, subdivision (e) gives the homeowner 90 days to respond to notice from park management that a search of public records shows the mobilehome is not the owner's principal residence. It does not conflict with or control over section 798.25, subdivision (b). In fact, it has nothing to do with the notice required under section 798.25, subdivision (b) on a change in the park rules.

Section 798.21, subdivision (f)(1) applies here. Freeman's space is not exempt from rent control.

## III

In any event, Freeman qualifies for protection of the rent control ordinance under section 798.21, subdivision (f)(2). That subdivision requires a homeowner to "actively market and advertise the mobilehome for sale in good faith to bona fide purchasers for value in order to remain exempt pursuant to this subdivision."

■ Vista argues the mobilehome must be actively marketed prior to receiving the notice provided in section 798.21, subdivision (d). Section 798.21, subdivision (d) requires the park management to give a homeowner notice that a review of the public records shows the mobilehome is not the owner's "principal residence" (*id.*, subd. (c)). Subdivision (e) of the section gives the homeowner 90 days to respond.

Vista's argument is based on the language of section 798.21, subdivision (f)(2) that the mobilehome must be actively marketed "in order to *remain* exempt pursuant to this subdivision." (Italics added.) Vista claims a homeowner cannot "remain" exempt once the notice is given.

■ The MRL is designed to provide owner-occupants of mobilehomes within mobilehome parks unique protection against actual or constructive eviction. (§ 798.21, subd. (a).) There is nothing more likely to lead to an actual or constructive eviction than an increase in rent. It would be contrary to the purpose of the statute to construe it so as to require an owner to market her mobilehome prior to the notice that may lead to deregulating the rent. It is that notice that in many instances will cause the homeowner to market the mobilehome for sale. If the Legislature had intended that the exemption provided by section 798.21, subdivision (f)(2) must begin prior to the notice leading to a deregulation of the rent, we assume it would have expressly said so.

The most reasonable construction of the requirement that the homeowner must actively market the mobilehome "in order to remain exempt pursuant to this subdivision" is that the exemption remains only as long as the mobilehome is actively marketed. (§ 798.21, subd. (f)(2).) It does not require the marketing to begin prior to notice that the mobilehome is not a principal residence, or at any other particular time.

Vista contends there is no substantial evidence to support the trial court's finding that the marketing exemption of section 798.21, subdivision (f)(2) applies.

In viewing the evidence, we look only to the evidence supporting the prevailing party. (*GHK Associates v. Mayer Group, Inc.* (1990) 224

Cal.App.3d 856, 872 [274 Cal.Rptr. 168].) We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. (*Ibid.*) Where the trier of fact has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 376, pp. 434–435.)

Vista's contention is based on the statutory requirement that the homeowner actively market the mobilehome to bona fide purchasers. Vista argues there is no evidence from any prospective purchaser that he or she might be a bona fide purchaser.

But section 798.21, subdivision (f)(2) does not require a showing that there is an actual prospective bona fide purchaser. It only requires a showing that the homeowner is making an active good faith effort to sell the mobilehome to bona fide purchasers. A showing that the homeowner is actively marketing the mobilehome to the general public is sufficient to meet this requirement.

Here Freeman has made such a showing. She placed a "for sale" sign in the window of her mobilehome as allowed by park rules; she fielded at least 35 telephone calls from interested people; she received an offer with a deposit; and five real estate agents, who specialize in mobilehomes, walked through her property. There is more than ample evidence to support the trial court's finding that Freeman qualifies under the marketing exemption.

The judgment is affirmed. Costs are awarded to respondent.

Yegan, J., and Perren, J., concurred.