Filed 12/8/25

**CERTIFIED FOR PUBLICATION**

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SANTA CLARA**

**APPELLATE DIVISION**

| | |
|---|---|
| SPRING OAKS CAPITAL SPV, LLC, | No. 25AP003082 |
|       Plaintiff and Respondent, | Trial Ct. No. 24CV439791 |
| v. | |
| JAMICE FOWLER, | OPINION |
|       Defendant and Appellant. | |

Defendant Jamice Fowler appeals from a judgment entered in favor of plaintiff Spring Oaks Capital SPV, LLC (Spring Oaks) on common counts for account stated and money lent. She argues the judgment must be reversed for two reasons. First, Fowler contends that the trial court erroneously permitted Spring Oaks to elicit testimony from an undisclosed trial witness after denying her in limine motion made under Code of Civil Procedure sections 96 and 97.[1] Second, Fowler challenges the trial court's admission of two exhibits (Exhibits 1 and 2) offered by Spring Oaks, contending the business records exception to the

---

[1] Additional undesignated statutory references are to the Code of Civil Procedure.

hearsay rule embodied at Evidence Code section 1271 was not established and the exhibits therefore lacked the required foundation for their admission.

We conclude Fowler's claims have merit and reverse the judgment.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Spring Oaks acquired a credit account in Fowler's name and filed a complaint against Fowler to recover the delinquent balance allegedly owed on the account. After Fowler filed an answer, the trial court scheduled the case for a court trial.

Approximately six weeks before the trial date, Fowler served Spring Oaks with a "Request for Statement of Witnesses and Evidence" using Judicial Council form DISC-015. The form stated that "[u]nder Code of Civil Procedure section 96, you are requested to serve on the undersigned, within 20 days, a statement of: [¶] 1. The names and street addresses of witnesses you intend to call at trial (except for any individual who is a party to this action). [¶] 2. A description of each document that you intend to offer a trial. Attach a copy of each document available to you. [¶] 3. A description of each photograph and other physical evidence you intend to offer at trial. [¶] Witnesses and evidence that will be used only for impeachment need not be included." The form also included this statement in boldface typeface: "You Will Not Be Permitted To Call Any Witnesses Or Introduce Any Evidence Not Included In Your Statement in Response To This Request, Except As Otherwise Provided by Law."

Spring Oaks served a response asserting, in relevant part, that it "intend[ed] to call a custodian of records." Spring Oaks also stated that it had "numerous custodians of record and ha[d] not yet determined which will appear at trial." However, Spring Oaks indicated that the "most likely" witness would be Kyle Collins, and that "[a]ll potential witnesses are authorized representatives of Spring Oaks Capital SPV, LLC, 1400 Crossways Blvd., Suite 100 B, Cheaspeake [sic], VA 23320."

After receiving Spring Oaks' response, Fowler submitted a motion in limine requesting that the trial court prohibit Spring Oaks from calling any witnesses at trial. Fowler argued that Spring Oaks' response to her request for a statement of witnesses did not comply with section 96 because it did not provide "the street address of the proposed witness, only the address of" Spring Oaks. Fowler explained that the omission of the address was "no mere technicality" because had Spring Oaks provided the witness' addresses, she could have served the witnesses with subpoenas to appear at trial and produce documents.

Spring Oaks and Fowler both appeared through counsel at the trial. Rather than Collins, Spring Oaks intended to present testimony from Veronica Russell as a custodian of records. Before any testimony was presented, however, Fowler moved in limine for the trial court to exclude testimony from any witness other than Collins because he was the only individual identified by Spring Oaks in its response to Fowler's request for a disclosure of witnesses. The trial court denied Fowler's motion because Spring Oaks' response stated that if Collins was unavailable, his testimony would be replaced by that of another custodian with the same knowledge.

Russell testified that she was employed by Spring Oaks and was familiar with its record-keeping processes. She also testified that Spring Oaks had performed a reconciliation with the records of the original creditor, the Bank of Missouri, to ensure Spring Oaks' records matched. But she said she never worked for the Bank of Missouri and was unfamiliar with its record-keeping and document-generation processes. Spring Oaks moved to admit Exhibits 1 and 2 during Russell's testimony as business records—chain of title documents and billing statements for the account, respectively—to which Fowler objected as lacking foundation and as hearsay as to which no exception had been established, including for business records under Evidence Code section 1271. Fowler also separately objected to the Declaration of Martha J. Rollet, the then Chief

Operations Officer of the Bank of Missouri, which was attached to Exhibit 1. Fowler argued that Rollet's declaration constituted inadmissible hearsay because it did not comply with section 98.

The trial court overruled the objections and admitted both exhibits, including Rollet's declaration. Fowler did not call any witnesses or offer any evidence. The trial court found Russell's testimony uncontradicted and credible and entered judgment in favor of Spring Oaks for the amount it sought in the complaint. Fowler filed a timely notice of appeal.

## II.      DISCUSSION

On appeal, Fowler contends that the trial court committed two evidentiary errors during the trial. First, Fowler argues that the trial court failed to properly apply sections 96 and 97 when it denied her motion in limine and permitted Spring Oaks to present testimony from Russell even though she was not identified in its written response to Fowler's section 96 request. Second, Fowler argues that the trial court incorrectly admitted Spring Oaks' two exhibits over her objections.

### A.      Motion to Exclude Witness Testimony

### 1.      Standard of Review

The parties disagree on the standard of review that applies to the trial court's ruling denying Fowler's motion in limine. Relying on *Cavalry SPV I, LLC v. Poalston* (2025) 109 Cal.App.5th Supp. 17 (*Poalston*), Fowler claims the standard is de novo because, from her perspective, this appeal requires us to interpret sections 96 and 97. Spring Oaks contends the standard is abuse of discretion because the trial court's ruling on the motion addressed the admissibility of evidence. (*Zhou v. Unisource Worldwide, Inc.* (2007) 157 Cal.App.4th 1471, 1476 (*Zhou*) ["A trial court's ruling on the admissibility of evidence is generally reviewed for abuse of discretion."].) We conclude that Spring Oaks is correct in the circumstances of this case.

4

"A motion in limine is made to exclude evidence before the evidence is offered at trial, on grounds that would be sufficient to object to or move to strike the evidence. The purpose of a motion in limine is 'to avoid the obviously futile attempt to 'unring the bell' in the event a motion to strike is granted in the proceedings before the jury.' " (*Edward v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 26.) Because "the trial court enjoys 'broad authority' over the admission and exclusion of evidence," the appellate court typically reviews "a trial court's ruling on a motion in limine to exclude evidence for an abuse of discretion." (*McCoy v. Pacific Maritime Assn.* (2013) 216 Cal.App.4th 283, 295.) "However, when the issue is one of law, we exercise de novo review. [Citation.]" (*Condon-Johnson & Associates, Inc. v. Sac. Municipal Utility Dist.* (2007) 149 Cal.App.4th 1384, 1392.) Thus, de novo review is applicable when the trial court's evidentiary ruling requires us to determine the "proper interpretation of a statute and the application of the statute to undisputed facts." (*California Veterinary Medical Assn. v. City of West Hollywood* (2007) 152 Cal.App.4th 536, 546.)

For example, in *Poalston*, the question presented was whether the defendant's section 96 request for a disclosure of witnesses was timely made following an order granting a motion for new trial. (*Poalston, supra*, 109 Cal.App.5th at pp. Supp. 23-24.) The parties' dispute focused on section 96, subdivision (b), which requires that such a request " 'be served no more than 45 days or less than 30 days prior to the first date set for trial, unless otherwise ordered.' " (*Ibid.*) While the plaintiff argued that this period should be calculated based on the date the case was first set for trial, the defendant argued it should be calculated based on the trial date set after a new trial was ordered. (*Ibid.*) The appellate division determined that the word "first" as used in section 96, subdivision (b), was ambiguous and susceptible to both parties' interpretations.

Exercising de novo review on undisputed facts, the appellate division applied the rules of statutory interpretation to resolve the appeal. (*Id.* at pp. Supp. 25-29.)

Here, our review of the trial court's in limine ruling does not require us to construe the provisions of either section 96 or section 97. Indeed, as *Poalston* demonstrates, statutory interpretation is required only when the language of a statute is ambiguous and subject to more than one possible interpretation. (*Poalston, supra*, 109 Cal.App.5th at pp. Supp. 25-29; *Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1249 [first question for statutory interpretation is whether the language is susceptible to more than one reasonable interpretation]; *DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 (*DaFonte*) ["When ' "statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it." ' "].)

But this record does not show that the parties presented competing statutory interpretations of sections 96 and 97 to the trial court, nor does it show that the trial court found it necessary to interpret the statutes when ruling on Fowler's motion in limine. Moreover, the parties have not offered different interpretations in their appellate briefing. In fact, despite requesting de novo review, Fowler argues that sections 96 and 97 are clear and unambiguous and not subject to further interpretation. Because we agree, we will ascribe the "usual and ordinary meaning" to the words used in sections 96 and 97 without engaging additional principles of statutory interpretation. (*DaFonte, supra*, 2 Cal.4th at p. 601 ["To determine the intent of legislation, we first consult the words themselves, giving them their usual and ordinary meaning"].)

We conclude that the proper standard to apply to the trial court's in limine ruling in the circumstances of this case is abuse of discretion, which "may be found if the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner." (*Hernandez v. Amcord, Inc.* (2013) 215 Cal.App.4th 659, 678.) Also, "[a]n evidentiary ruling that 'rests on an error of law is an abuse

6

of discretion.' " (*Kourounian v. California Dept. of Tax & Fee Admin.* (2023) 91 Cal.App.5th 1100, 1112 (*Kourounian*).) A misapplication of a statute is such a " 'demonstrable error of law' " that constitutes an abuse of discretion. (*People v. Jennings* (2005) 128 Cal.App.4th 42, 49.) This is because the scope of discretion always resides in the particular law being applied based on the legal principles governing the subject of the action. Action that transgresses these principles is outside the scope of discretion and constitutes abuse. (*People v. Tran* (2013) 215 Cal.App.4th 1207, 1218.)

### 2. The Trial Court Abused its Discretion by Denying Fowler's In Limine Motion

"Section 96 applies in cases, as the present one, involving economic litigation in limited civil jurisdiction actions. [Citations]. Section 96, subdivision (a), allows a party to make a request to an opposing party of 'the names and addresses of witnesses . . . you intend to call at trial.' " (*Poalston, supra*, 109 Cal.App.5th at p. Supp. 24.) As noted, a request for witness information is timely if "served no more than 45 days or less than 30 days prior to the first date set for trial, unless otherwise ordered." (§ 96, subd. (b).) "A statement responding to the request shall be served within 20 days from the service of the request." (§ 96, subd. (c).) Also, the statute specifies that "[n]o additional, amended, or late statement is permitted except by written stipulation or unless ordered for good cause on noticed motion." (§ 96, subd. (d).)

Section 97, in turn, describes how a request for a disclosure of witnesses under section 96 can affect the presentation of evidence a trial. Subdivision (a) of section 97 provides that subject to certain exceptions, "upon objection of a party who served a request in compliance with Section 96, no party required to serve a responding statement may call a witness or introduce evidence, except for purposes of impeachment, against the objecting party unless the witness or evidence was included in the statement served."

Section 97, subdivision (b), sets forth the exceptions to the exclusion of witnesses and evidence mandated when a party does not comply with section 96, subdivision (a). One exception allows for testimony from "[a] person who, in his or her individual capacity, is a party to the litigation and who calls himself or herself as a witness," even if that party did not serve a compliant witness disclosure under section 96. (§ 97, subd. (b)(1).) Another states that "[t]he court may, upon terms as may be just (including, but not limited to, continuing the trial for a reasonable period of time and awarding costs and litigation expenses), permit a party to call a witness or introduce evidence which is required to be, but is not included in such party's statement so long as the court finds that such party has made a good faith effort to comply with subdivision (c) of Section 96 or that the failure to comply was the result of his or her mistake, inadvertence, surprise or excusable neglect as provided in Section 473." (§ 97, subd. (b)(5).)

In its response to Fowler's section 96 request for a disclosure of witnesses, Spring Oaks identified only Collins by name and stated that Collins was the custodian of records it was "most likely" to call at trial. But at the same time, Spring Oaks indicated that it had several custodians and had not yet determined which of these individuals would actually be called to testify. The name of the custodian of records who ultimately did appear at trial to testify, Russell, was not disclosed by Spring Oaks in its response.

Spring Oaks does not represent in its responding brief that it provided Fowler with the precise witness information pertaining to Russell that was called for by section 96. Nor could it, because subdivision (a) of section 96 required Spring Oaks to state the "names and addresses" of the witnesses it intended to call at trial. The usual and ordinary meaning of the word "name" is "a word or phrase that constitutes the distinctive designation of a person or thing." (Merriam-Webster Dict. Online (2025) <https://www.merriam-webster.com/dictionary/name> [as of Nov. 25, 2025]; see *Coburn v. Sievert* (2005)

8

133 Cal.App.4th 1483, 1499 ["To obtain the usual and ordinary meaning of a word, a court may refer to the definitions contained in a dictionary"].) Nothing in Spring Oaks' witness disclosure could be considered a "distinctive designation" that identified Russell since the only possible information applicable to her was the statement that Spring Oaks intended to call one of its several custodians as a trial witness. But that statement, which conceivably encompassed many other unidentified custodians apart from Russell, was simply too general to comply with section 96. In the absence of ambiguity, the statute means what it says: Spring Oaks needed to include Russell's *name* in its response. (See *Diamond Multimedia Systems, Inc. v. Super. Ct.* (1999) 19 Cal.4th 1036, 1047 [courts presume the Legislature " 'meant what it said' " when there is no ambiguity in statutory language].) Since it did not do so, we conclude that Spring Oaks did not sufficiently disclose Russell. And faced with Fowler's motion in limine, the trial court should have prohibited Spring Oaks from calling Russell to testify in the absence of a pertinent exception. (§ 97, subd. (a).)

Relying on one of those exceptions, Spring Oaks suggests that because it served a timely response to Fowler's request, the trial court could have properly denied Fowler's in limine motion based on a finding that Spring Oaks "made a good faith effort to comply" with section 96, subdivision (c). (§ 97, subd. (b)(5).) To that end, Spring Oaks argues that because section 96, subdivision (c), governs only the deadline for serving a response and not its content, its act of serving a response within the prescribed period was sufficient; the trial court was not required to find that Spring Oaks made a good faith attempt to identify Russell for the exception to apply.

We are not convinced. Although "[a] judgment or order of the lower court is presumed correct" and "[a]ll intendments and presumptions are indulged to support it" (*Denham v. Super. Ct.* (1970) 2 Cal.3d 557, 564), we may affirm only on a "rationale supported by the record" (*State Farm Fire & Casualty Co. v.*

9

*Pietak* (2001) 90 Cal.App.4th 600, 610). Thus, "[w]hen the record clearly demonstrates what the trial court did, we will not presume it did something different." (*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 39 Cal.App.4th 1379, 1384.) Here, the appellate record—which consists of the clerk's transcript and an agreed statement prepared by the parties—clearly demonstrates that the trial court denied Fowler's in limine motion based on its perception that Fowler would not be prejudiced by allowing Russell to testify in light of Spring Oaks' statement that Collins might be replaced by another custodian. Nothing in the record suggests that the trial court was considering the exception from section 97, subdivision (b)(5), or that it found that Spring Oaks had made good faith effort to comply with section 96, subdivision (c).

Spring Oaks also contends that the trial court could have determined that it substantially complied with the section 96 witness disclosure obligation because it included the role of its anticipated trial witness in the response. " ' " 'Substantial compliance, as the phrase is used in the decisions, means actual compliance in respect to the substance essential to every reasonable objective of the statute.' [Citation.] Where there is compliance as to all matters of substance[,] technical deviations are not to be given the stature of noncompliance. [Citation.] Substance prevails over form." ' " (*Andrews v. Metropolitan Transit System* (2022) 74 Cal.App.5th 597, 606 (*Andrews*).) In other words, "[s]ubstantial compliance with a statute is dependent on the meaning and purpose of the statute." (*Freeman v. Vista de Santa Barbara Associates, LP* (2012) 207 Cal.App.4th 791, 793.) However, "[t]he doctrine of substantial compliance does not allow an excuse to literal noncompliance in every situation." (*Zembsch v. Super. Ct.* (2006) 146 Cal.App.4th 153, 166.)

Spring Oaks claims that the purposes of section 96 are to prevent surprise by requiring the responding party to identify its witnesses before trial and to preclude a responding party from calling witnesses it has not previously

10

identified. This appears to be correct but we add that the section 96 disclosure requirement also works to supply the requesting party with information that can be used to prepare their own case or defense. Given these purposes, we cannot say that merely disclosing a witness' role apart from their name constitutes substantial compliance with the " ' " 'reasonable objective' " ' " of section 96. (*Andrews, supra*, 74 Cal.App.5th at p. 606.) Knowing only a witness' role before trial does little to lessen surprise and hampers, rather than advances, the requesting party's ability to prepare since the requesting party may not know until the trial begins exactly who the responding party will call to testify. Moreover, as we have already explained, the plain language of the statute expressly requires the responding party to disclose a witness by name, not by role or profession. (§ 96, subd. (a).) We therefore reject the notion that the disclosure of a witness' role or profession without providing the witness' name constitutes a mere technical deviation from the substantive requirements of section 96.

On this record, we conclude that Spring Oaks' response to Fowler's section 96 request did not adequately notify Fowler that Russell would be called to testify at trial, and that neither an exception to section 97 nor the doctrine of substantial compliance excuse the deficiency. Accordingly, the trial court should have precluded Russell from testifying and erred by denying Fowler's motion in limine requesting such relief, abusing its discretion.[2]

We also conclude that the trial court's error was not harmless. Without Russell's testimony—the sole witness to testify at trial—Spring Oaks could not have admitted the records documenting Fowler's account and indebtedness or otherwise have proven its claims. (See *Poalston, supra*, 109 Cal.App.5th at pp. Supp. 28-29.) Thus, Fowler was prejudiced by the error and the judgment must be reversed. (See *ABM Industries Overtime Cases* (2017) 19 Cal.App.5th 277, 293

---

[2] We note that our holding on this issue would be the same whether under a de novo or abuse of discretion standard of review.

[" 'judgment of the trial court may not be reversed on the basis of erroneous admission of evidence, unless that error was prejudicial"]; *Kourournian, supra*, 91 Cal.App.5th at p. 1112 [appellate court will reverse only where " ' "it is reasonably probably that a result more favorable to the appealing party would have been reached in the absence of the error" ' "].)

### B.     The Trial Court Abused its Discretion by Admitting Exhibits 1 and 2 Over Fowler's Objections

While our holding is dispositive on Fowler's claim of error as to the trial court's in limine ruling to admit witness testimony not properly identified by Spring Oaks under section 96 and 97, we address her second claim of error as to the admission of Spring Oaks' Exhibits 1 and 2 for guidance on remand, particularly as there is conflicting authority on the topic. We conclude that *Sierra Managed Asset Plan, LLC v. Hale* (2015) 240 Cal.App.4th Supp. 1 (*Sierra*) and *Midland Funding LLC v. Romero* (2016) 5 Cal.App.5th Supp. 1 (*Midland*) are better reasoned than *Unifund CCR, LLC v. Dear* (2015) 243 Cal.App.4th Supp. 1 (*Unifund*).

On this issue, Fowler argues that the trial court erred by admitting Exhibits 1 and 2 over her hearsay objection. Exhibit 1 consisted of documents purportedly evidencing the sale of Fowler's account from the Bank of Missouri first to Concora Credit, Inc. and then to Spring Oaks Capital LLC, which subsequently assigned the account to Spring Oaks. Included within Exhibit 1 was Rollet's declaration, in which Rollet stated that the Bank of Missouri's records pertaining to Fowler's account were kept in the ordinary course of business prior to the sale. Exhibit 2 was a compilation of the billing statements issued on Fowler's account. For its part, Spring Oaks contends that the trial court correctly found that the exhibits were properly authenticated under the hearsay exception for business records. We review a claim of evidentiary error for abuse of discretion. (*Zhou, supra*, 157 Cal.App.4th at p. 1476.)

Hearsay is "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to provide the truth of the matters stated." (Evid. Code, § 1200, subd. (a).) "Hearsay evidence is generally inadmissible unless it satisfies a statutory exception. (Evid. Code, § 1200, subd. (b).)" (*People v. Turner* (2020) 10 Cal.5th 786, 821.) One exception to the rule against hearsay is for business records. Under the exception, "[e]vidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition or event if: [¶] (a) The writing was made in the regular course of a business; [¶] (b) The writing was made at or near the time of the act, condition or event; [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] The sources of information and method and time of preparation were such as to indicate its trustworthiness." (Evid. Code, § 1271; see e.g., *Klem v. Access Ins. Co.* (2017) 17 Cal.App.5th 595, 606-607 [insurer's claims log with entries made contemporaneously with conversation or action and maintained in the regular course of business admissible as business records, at least as to one layer of hearsay]; *Jones v. Solgen Construction, LLC* (2024) 99 Cal.App.5th 1178, 1188-1190 [loan agreements executed through Docusign properly admitted as business records satisfying Evid. Code § 1271].)

Generally, written declarations are hearsay and "inadmissible at trial over objection unless allowed by special statute or stipulation of the parties." (*Malatka v. Helm* (2010) 188 Cal.App.4th 1074, 1085, fn. 5.) In limited civil cases, "[a] party may, in lieu of presenting direct testimony, offer the prepared testimony of relevant witnesses in the form of affidavits or declarations under penalty of perjury." (§ 98.) "To the extent the contents of the prepared testimony would have been admissible were the witness to testify orally thereto, the prepared testimony shall be received as evidence in the case," so long as "[a] copy has been served on the party against whom it is offered at least 30 days prior to the trial, together

13

with a current address of the affiant that is within 150 miles of the place of trial, and the affiant is available for service of process at that place for a reasonable period of time, during the 20 days immediately prior to trial." (§ 98, subd. (a).)

The parties' positions on the admissibility of Exhibits 1 and 2 reflect a current split amongst appellate divisions on the application of the business records exception to hearsay in debt collection actions. Spring Oaks relies on *Unifund*, in which the plaintiff creditor introduced at trial a declaration from one of its custodians of records who described the chain of title of the defendant's account. (*Unifund, supra*, 243 Cal.App.4th at p. Supp. 5.) According to the custodian, "the original creditor was Citibank, which subsequently sold the account to Pilot, which later assigned it to Unifund CCR Partners, which subsequently assigned the account to plaintiff." (*Ibid.*) Also attached to the declaration were several documents, including a bill of sale and assignments evidencing the transfers and the monthly billing statements on the defendant's account. (*Ibid.*) The defendant objected to the declaration and attached exhibits based upon a lack of foundation, lack of authentication, and hearsay, and argued that the custodian did not have sufficient personal knowledge of Citibank's record-keeping systems and practices to qualify the documents for admission under the business records exception. (*Ibid.*) The trial court overruled the objection and admitted both the declaration and attached documents, concluding that "there's no requirement for personal knowledge of the custodian" for the business records exception to apply. (*Id.* at p. Supp. 5.) Judgment was then entered judgment in the plaintiff's favor. (*Id.* at p. Supp. 7.)

The appellate division affirmed the judgment and, in doing so, concluded that the trial court's admission of the custodian's declaration and attached documents was not an abuse of discretion. (*Unifund, supra*, 243 Cal.App.4th at pp. Supp. 9, 12.) The court reasoned that the custodian's personal knowledge of the plaintiff's record-keeping practices, as opposed to those of the original

14

creditor, was enough for the documents to be admitted because a "qualified witness need not be the custodian, the person who created the record, or one with personal knowledge in order for a business record to be admissible under the hearsay exception." (*Id*. at pp. Supp. 7-8.)

*Unifund* disagreed with a contrary conclusion reached in *Sierra*, upon which Fowler relies. In that case, the plaintiff served the defendant with a section 98 declaration from a custodian of records that described the assignments leading to the plaintiff's acquisition of the defendant's account and had attached to it the account agreement, account statements, and a declaration from the custodian of records for the original creditor, Citibank. (*Sierra, supra*, 240 Cal.App.4th at pp. Supp. 4, 9.) During the trial on the plaintiff's claims to collect on the account, the trial court admitted the custodian's declaration and its attachments over the defendant's objections based on hearsay and lack of personal knowledge and entered judgment in the plaintiff's favor. (*Id*. at p. Supp. 4.) However, the appellate division reversed, concluding that while the section 98 declaration was properly admitted, the trial court abused its discretion by admitting the attachments. (*Id*. at p. Supp. 7.) The court reasoned that the plaintiff's custodian established only that the plaintiff had "received records from Citibank concerning the account in question," which "falls short of the foundation necessary for admission of business records as against a hearsay objection." (*Id*. at p. Supp. 9.) As to the declaration from Citibank's custodian, the court determined that it was inadmissible hearsay because, in response to the defendant's objection, the plaintiff should have produced a qualified witness to lay the foundation required by Evidence Code section 1271 but did not do so. (*Ibid*.)

In *Midland*, upon which Fowler also relies, the custodian's section 98 declaration described only their knowledge of the plaintiff's record-keeping practices but not those of the original creditor. (*Midland, supra*, 5 Cal.App.5th at

pp. Supp. 3-5.) The trial court admitted the declaration and its attached exhibits, consisting of the account statements and documents related to the sale of the account to the plaintiff, over the defendant's hearsay objection and entered judgment in favor of the plaintiff. (*Id*. at p. Supp. 5.) However, the appellate division reversed and, as relevant here, concluded that the trial court abused its discretion by admitting the attachments to the declaration. (*Id*. at pp. Supp. 9-10.) The court explained that while the declaration demonstrated the custodian's personal knowledge of the plaintiff's business records, it "did not satisfactorily establish those documents were a part of the prior creditor's business records under Evidence Code section 1271. That is, there was no evidence regarding the mode of preparation or other information indicating trustworthiness." (*Id*. at p. Supp. 9.) Rejecting the holding from *Unifund*, the *Midland* court explained that the "pragmatic approach" adopted in that case for consumer debt collection actions "relaxed the requirements under the Evidence Code regarding the business records exception to hearsay." (*Ibid*.)

Following *Midland*, we also decline to adopt the "relaxed" application of the business records exception from *Unifund*. The *Unifund* court justified its conclusion by relying on section 98, which it classified as "already a noted departure from the hearsay rule," and also on the nature of limited civil cases, which do not permit the same level of pretrial discovery as do unlimited civil cases. (*Unifund, supra*, 243 Cal.App.4th at pp. Supp. 11-12.) The *Unifund* court opined that "[t]o require a restrictive interpretation of the business records exception for bank credit card collection account records would undoubtedly lead to more discovery, more court intervention burdening our already crowded trial courts, and more attorneys fees incurred by both parties." (*Id*. at p. Supp. 12.) But in our view, these observations do not support creating a categorically different approach to the business records exception for debt collection cases in the absence of specific direction from the Legislature. (See *Roberts v. City of*

16

*Palmdale* (1993) 5 Cal.4th 363, 372-373 [not a court's function "to add language or imply exceptions to statutes passed by the Legislature"].) Unlike the *Unifund* court, we discern no such legislative direction from section 98 or from the nature of limited civil cases. If anything, the language of section 98 implies that the rules of evidence apply in limited civil cases in the same way as they apply in unlimited civil cases since the statute specifies that statements in a declaration are admissible only to the extent they would be admissible if the declarant testified orally.

We therefore respectfully disagree with *Unifund* and find *Sierra* and *Midland* instructive on the issue before us. Here, Russell testified that she was familiar with Spring Oaks' record-keeping practices but was not familiar with the record-keeping practices of the original creditor, the Bank of Missouri. Although Evidence Code section 1271 requires only that a "qualified witness" testify, the witness must nonetheless "be familiar with the procedures followed" to establish a factual basis for the exception to apply. (*Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 322.) Russell, by her own testimony, was not familiar with the procedures followed by the Bank of Missouri and could not competently state that the documents were made in the regular course of business or explain their mode of preparation. Accordingly, Russell was not qualified to establish that Exhibits 1 and 2 were admissible under the business records exception. This deficiency was not cured by Rollet's declaration because, as explained in *Sierra*, the declaration was inadmissible hearsay without a qualified witness at trial who was familiar with Citibank's practices and could lay the foundation required by Evidence Code section 1271.[3] (*Sierra, supra*, 240 Cal.App.4th at p. Supp. 9.)

---

[3] Spring Oaks clarifies in its responding brief that it did not proffer Rollet's declaration for admission under section 98. Regardless, we observe for the parties' guidance on remand that the declaration is not admissible under section 98 because it does not contain "a current address of the affiant that is within 150 miles of the place of trial." (§ 98, subd. (a).)

Therefore, the trial court abused its discretion by admitting Exhibits 1 and 2, including Rollet's declaration, over Fowler's hearsay objection. Since this error was prejudicial to Fowler, it constitutes an additional basis for reversal of the judgment. (*Sierra, supra*, 240 Cal.App.4th at pp. Supp. 9-10; *Midland, supra*, 5 Cal.App.5th at p. Supp. 10.)

### III.    DISPOSITION

The judgment is reversed. On remand, the trial court is directed to grant Fowler's in limine motion to exclude any witness offered by Spring Oaks not properly identified in its response to Fowler's section 96 request. The trial court is further directed to exclude Spring Oaks' Exhibits 1 and 2 unless a proper foundation is laid for their admission, including under the business records exception to hearsay from Evidence Code section 1271. Fowler is entitled to costs on appeal. (Cal. Rules of Court, rule 8.891(a)(2).)


_____
Adams, J.

WE CONCUR:


_____
Williams, P.J.


_____
Kulkarni, J.

18

Trial Court:                          Santa Clara County Superior Court
                                      Superior Court No. 24CV439791


Trial Judge:                          Hon. Evette D. Pennypacker


Attorneys for Appellant:              Scott Maurer
Jamice Fowler                          Hanchel Cheng (cert. law student)
                                       Katharine and George Alexander
                                       Community Law Center

Attorneys for Respondent:             Flint C. Zide
Spring Oaks Capital SPV, LLC          Scott & Associates